## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 43269

PATRICIA MAREK, an Idaho resident,  )
individually and as personal representative of  )
the ESTATE OF LARRY "PETE" MAREK;  )
MICHAEL MAREK, an Idaho resident;  )
JODIE MAREK, an Idaho resident;  )
HAYLEY MAREK, a Washington resident,  )
  )
    Plaintiffs-Appellants.  )
  )
v.  )
  )
HECLA, LIMITED, a Delaware corporation;  )
HECLA MINING COMPANY, a Delaware  )
corporation; SILVER HUNTER MINING  )
COMPANY, a Delaware corporation;  )
PHILLIP S. BAKER, JR., ("Baker"), an  )
Idaho resident; JOHN JORDAN, an Idaho  )
resident;  DOUG BAYER, an Idaho resident;  )
RON KRUSEMARK, an Idaho resident;  )
SCOTT HAGAMIER, an Idaho resident;  )
CINDY MOORE, an Idaho resident; DALE  )
STEPRO,  an Idaho resident,  )
  )
    Defendants-Respondents,  )
  )
and  )
  )
DOES I-10 AND XYZ, INC. 1-10,  )
  )
    Defendants.  )

Coeur d' Alene, August 2016

2016 Opinion No. 132

Filed:  November 18, 2016

Stephen W. Kenyon, Clerk

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Benjamin R. Simpson, Senior District Judge.

District court order granting summary judgment, <u>affirmed.</u>

Duke Scanlan & Hall, PLLC, Boise, for appellants. Keely Duke argued.

Ramsden, Marfice, Ealy & Harris, LLP, Coeur d'Alene, for respondents. Michael E. Ramsden argued.

_____

BURDICK, Justice

Patricia Marek, et al. (Mareks) appeal the judgment entered by the Kootenai County District Court granting Hecla Mining Company, et al. (Hecla) summary judgment. On April 15, 2011, Larry "Pete" Marek was fatally injured in a large rock fall in the Lucky Friday Mine, which is owned and operated by Hecla. Mareks contend that Hecla's decision to remove a pillar from the mining area constituted sufficiently egregious conduct that Mareks should be allowed to pursue their claims outside of the Idaho Worker's Compensation Act. On cross motions for summary judgment, the district court ruled that because Hecla's conduct did not amount to "willful[1] or unprovoked physical aggression" under Idaho code section 72-209(3) the claims were barred by the exclusivity provision of the Worker's Compensation Act. We affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Brothers Larry "Pete" and Mike Marek (Pete and Mike) were both employed as miners for Hecla at the Lucky Friday Mine. On April 15, 2011, Pete and Mike were assigned to work in the spray chamber outside of the 6150-15-3 stope.[2] Prior to their arrival, mine workers, at the direction of Hecla, undercut the waste pillar in the 6150-15-3 west stope.

Upon arriving at the 6150-15-3 stope, rather than work in the spray chamber, Pete and Mike decided to water down the muck in the stope.[3] Pete watered the muck in the 6150-15-3 west stope and Mike watered the muck in the 6150-15-3 east stope. On April 5, 2011, at

---

[1] "Willful" is spelled in section 72-209(3) using the archaic spelling: "wilful." We, however, will use the modern spelling, "willful," throughout.

[2] A "stope" is a tunnel from which ore is mined. "6150" refers to the depth within the mine the stope is located (6,150 feet underground); "15" refers to the particular stope (versus other numbered tunnels at the 6150 level); and "3" refers to the "cut" in that particular stope (here, the tunnel was in the third 'cut,' with two prior cuts above having been removed and filled with a sand and concrete mixture). The stope is entered through a "slot," an access tunnel from the main underground travel ways. Here, the slot runs south from the travel way to the stope, where it intersects the stope in a T-shaped intersection. Each of the "arms" of the stope are designated by compass direction from the slot—Pete was working in "6150-15-3-West" at the time of the collapse, and Mike was working in "6150-15-3-East."

[3] Regarding the work Mike and Pete performed that evening, Mike stated:
Q: Do you recall what you were asked to do by Mr. Stepro that evening?
A: Yeah, he told us to work on the spray chamber.
Q: And tell me what the spray chamber is.
A: You've got a fan outside your stope, outside the slot area, that blows air through a vent pipe in through a chilled water system and out into your stope.
. . . .
Q: So you were told to work on the spray chamber.
A: Yes.
. . . .
Q: And did you do that?
A: No.
Q: What did you and your brother do?
A: We went into the stope and wet down.

approximately 5:30 p.m., Mike observed Pete rolling up the hose he had been using to water the muck when the 6150-15-3 west stope collapsed on top of Pete. Mareks allege that the failure of the stope was caused by Hecla's decision to undercut the waste pillar. The cave-in was approximately 90 feet long, 20 feet wide and 30 feet high. Despite his efforts, Mike was not able to rescue Pete, and a search for Pete over the next nine days recovered Pete's body on April 24, 2011. Pete's cause of death was determined to be blunt force trauma. The U.S. Mine Safety & Health Administration (MSHA) found that Hecla's conduct in removing the waste pillar "constituted more than ordinary negligence" and issued three citations related to the removal of the waste pillar in the 6150-15 stope.

Mareks filed a complaint on April 12, 2013. In its answer, Hecla asserted that worker's compensation law was the exclusive remedy for Mareks' claims. Both parties then filed motions for summary judgment. The court heard oral argument on the parties' cross motions for summary judgment on April 14, 2015. Following oral argument, the court took the matters under advisement and issued its Memorandum Decision and Order granting Hecla summary judgment on April 21, 2015. In its decision, the district court ruled that because Mareks failed to present any evidence that the injuries suffered were caused by Hecla's "willful or unprovoked physical aggression," Hecla was entitled to summary judgment as a matter of law. Specifically, the court pointed to a lack of evidence that Hecla harbored any ill will towards Mike or Pete or that Hecla had actual knowledge the stope would collapse. Without such evidence, the district court ruled that the exclusivity exception under section 72-209(3) did not apply and that the Worker's Compensation Act was Mareks exclusive remedy. The district court entered its final judgment on May 5, 2015.

Mareks filed a motion for reconsideration on April 29, 2015, and filed an affidavit and memorandum in support of their motion on June 22, 2015, and August 4, 2015, respectively. The district court heard oral argument on the motion and subsequently denied the motion on September 1, 2015.

## II.  STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo, and apply the same standard used by the district court in ruling on the motion. *Grazer v. Jones*, 154 Idaho 58, 64, 294 P.3d 184, 190 (2013). Summary judgment is appropriate when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

3

material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). All reasonable inferences that can be drawn from the record are to be drawn in favor of the nonmoving party, and disputed facts are liberally construed in the nonmoving party's favor. *Mackay v. Four Rivers Packing Co.*, 145 Idaho 408, 410, 179 P.3d 1064, 1066 (2008).

"[W]hen the district court grants summary judgment and then denies a motion for reconsideration, this Court must determine whether the evidence presented a genuine issue of material fact to defeat summary judgment. This means the Court reviews the district court's denial of a motion for reconsideration de novo." *Massey v. Conagra Foods, Inc.*, 156 Idaho 476, 480, 328 P.3d 456, 460 (2014) (quoting *Bremer, LLC v. E. Greenacres Irrigation Dist.*, 155 Idaho 736, 744, 316 P.3d 652, 660 (2013)).

## III.    ANALYSIS

Mareks' main argument is that Hecla's failure to have an engineer review and approve the pillar removal, failure to heed warnings from experienced employees about the removal of the pillar, and failure to perform a safety review and follow safety standards promulgated by MSHA when removing the pillar constituted "willful or unprovoked physical aggression" such that the district court erred in ruling that the exclusivity exception under Idaho Code section 79-209(3) did not apply.

**A. The district court did not err by granting Hecla summary judgment.**

1. The district court did not err in ruling that Mareks bore the burden of proof in establishing whether the exclusivity exception under Idaho Code section 72-209(3) applies.

Mareks argue that "the district court erred in ruling that the Mareks—rather than Hecla— bore the burden regarding worker's compensation exclusivity on summary judgment." Mareks are incorrect.

In *Roe v. Albertson's Inc.*, 141 Idaho 524, 530, 112 P.3d 812, 818 (2005), we stated: "Albertson's, as the moving party, must show there is no genuine issue as to any material fact that Doe would have been covered by worker's compensation and that it is therefore entitled to judgment as a matter of law." Thus, when an employer claims it is protected from civil suit by the worker's compensation exclusivity rule the employer bears the burden of proving the injury suffered falls within the worker's compensation statutes. In *Kearney v. Denker*, we stated that to show an injury falls under the section 72-209(3) exception to exclusivity the employee must prove the injury was "caused by the willful or unprovoked physical aggression of the employer."

4

114 Idaho 755, 757, 760 P.2d 1171, 1173 (1988). Thus, the original burden of showing the injury is the type of injury generally covered by the Worker's Compensation Act falls on the employer, however, after establishing the Worker's Compensation Act applies, the burden of showing the injury falls under the section 72-209(3) exception falls on the employee.

Here, Hecla presented a prima facie case that the injuries suffered by Mike and Pete were covered by the Worker's Compensation Act.[4] Mareks responded that the injuries suffered fell under the section 72-209(3) exclusivity exception. Thus, Mareks bore the burden of showing Hecla's conduct constituted "willful or unprovoked physical aggression," and the district court did not err in so ruling. *See, e.g.*, *Id.*; *DeMoss v. City of Coeur D'Alene*, 118 Idaho 176, 179, 795 P.2d 875, 878 (1990); *McVicker v. City of Lewiston*, 134 Idaho 34, 37, 995 P.2d 804, 807 (2000) ("Once the movant has established a prima facie case that, on the basis of uncontroverted facts, the movant is entitled to judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial . . . .").

2. The district court did not err by ruling that the exclusivity exception under Idaho Code section 79-209(3) did not apply.

The Idaho Worker's Compensation Act is a compromise between injured workers and their employers that provides a limit on liability for employers in return for providing sure and certain relief for the injured worker. *Blake v. Starr*, 146 Idaho 847, 851, 203 P.3d 1246, 1250 (2009); *Yount v. Boundary Cty.*, 118 Idaho 307, 307, 796 P.2d 516, 516 (1990) ("Such being the *quid pro quo* for eliminating the previous remedy of seeking a tort recovery from employers."). To this end, Idaho Code section 72-209(1) states: "the liability of the employer under this law shall be exclusive and in place of all other liability of the employer to the employee, his spouse, dependents, heirs, legal representatives or assigns." However, there is an exception to this rule "where the injury or death is proximately caused by the willful or unprovoked physical aggression of the employer, its officers, agents, servants or employees." I.C. § 72-209(3).

Resolution of this case rests on the meaning of the phrase "willful or unprovoked physical aggression." When interpreting statutory language, we have stated numerous times: "The objective of statutory interpretation is to give effect to legislative intent. Because the best

---

[4] It is undisputed that Mike and Pete suffered injuries from an accident arising out of in and the course of their employment. *Dominguez ex rel. Hamp v. Evergreen Res., Inc.*, 142 Idaho 7, 11, 121 P.3d 938, 942 (2005) ("Idaho's worker's compensation law provides benefits for workers who suffer injuries arising out of and in the course of employment."). Additionally, Mike's and Pete's worker's compensation claims have already been paid out.

5

guide to legislative intent is the words of the statute itself, the interpretation of a statute must begin with the literal words of the statute." *Gordon v. Hedrick*, 159 Idaho 604, 609, 364 P.3d 951, 956 (2015) (quoting *State v. Yzaguirre*, 144 Idaho 471, 475, 163 P.3d 1183, 1187 (2007)). "Moreover, unless a contrary purpose is clearly indicated, ordinary words will be given their ordinary meaning when construing a statute." *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Ada Cty.*, 123 Idaho 410, 415, 849 P.2d 83, 88 (1993). "To ascertain the ordinary meaning of an undefined term in a statute, we have often turned to dictionary definitions of the term." *Arnold v. City of Stanley*, 158 Idaho 218, 221, 345 P.3d 1008, 1011 (2015).

In *Kearney*, we considered the term "willful or unprovoked physical aggression." 114 Idaho at 757, 760 P.2d at 1173. In that case, an employee argued the employer's failure to install certain safety devices on a lawnmower amounted to willful or unprovoked physical aggression. *Id.* at 756, 760 P.2d at 1172. Focusing on the word "aggression" we stated: "The word 'aggression' connotes 'an offensive action' such as an 'overt hostile attack.' " *Id.* at 757, 760 P.2d at 1173 (quoting *Webster's Third New Int'l Dictionary* 41 (1969)). Relying on that definition, we further noted: "To prove aggression there must be evidence of some offensive action or hostile attack," and ultimately concluded: "§ 72-209(3) require[s] an intention to injure the employee." *Id.* at 757–58, 760 P.2d at 1173–74. We reaffirm our statements in *Kearney*. To prove aggression there must be evidence of (1) an offensive action or hostile attack and (2) intention to injure an employee.

Absent from our decision in *Kearney*, however, is a discussion of the terms "physical" and "willful or unprovoked." These terms modify the term aggression. Physical directly modifies aggression and is defined as "of or relating to the body—often opposed to mental." *Webster's Third New Int'l Dictionary* 1707(1969). Accordingly, physical identifies the type of aggression that will satisfy the standard: only offensive actions or hostile attacks aimed at the bodily integrity of the employee—opposed to mental, emotional, pecuniary, or other types of aggression—are implicated.

In turn, the terms "willful or unprovoked" modify the phrase "physical aggression." However, these terms, rather than modify the type of aggression at issue, modify the level of intent required in effectuating the act of physical aggression. At the outset, we note that these terms are separated by the disjunctive conjunction "or." Use of the disjunctive clearly indicates

6

that the meaning of the words "willful" and "unprovoked" are distinct from one another. *E.g.*, *State v. Herren*, 157 Idaho 722, 726, 339 P.3d 1126, 1130 (2014) ("The word 'or' is disjunctive, meaning that it is a conjunction used to introduce an alternative."). Thus, conduct amounting to either "willful physical aggression" or "unprovoked physical aggression" is sufficient, standing alone, to trigger the exclusivity exception under section 72-209(3).

"Willful" is defined in *Webster's Third New International Dictionary* as "done deliberately: not accidental or without purpose." *Webster's Third New International Dictionary* 2617 (1969). *Black's Law Dictionary* defines willful as "[v]oluntary and intentional, but not necessarily malicious." 1630 (8th ed. 2004). Thus, the term "willful" when applied to "physical aggression" requires that an employer deliberately or purposefully commit an act of physical aggression against an employee.

Conversely, "unprovoked" is defined as "to rid of a motive, desire, or capability." *Webster's Third New Int'l Dictionary* 2506 (1969). Consequently, an act of "unprovoked physical aggression" is one where an act of physical aggression is committed without a deliberate or specific purpose in effectuating the act.

The difference between the two terms is in the level of intent required in committing the act of physical aggression. An act of "willful physical aggression" requires a level of intent that is deliberate and purposeful. As our sister court in Oregon explained:

> A deliberate act is one the consequences of which are weighed in the mind beforehand. It is prolonged premeditation, and the word when used in connection with an injury to another denotes design and malignity of heart. . . . the employer must have determined to injure an employé and used some means appropriate to that end; that there must be a specific intent, and not merely carelessness or negligence, however gross.

*Jenkins v. Carman Mfg. Co.*, 155 P. 703, 705 (Ore. 1916). Under such a standard, an employee must show the employer wished a specific individual employee harm and then effectuated some means appropriate to that end. Thus, when combined with our previous definition of physical aggression, an act of "willful physical aggression" is one where there is evidence that the employer (1) committed an offensive action or hostile attack (2) aimed at the bodily integrity of the employee with (3) a willful, i.e., specific, intent to injure the employee.

An act of "unprovoked physical aggression," however, is one lacking in motive, deliberation, or specific purpose. Thus, opposed to the willful standard, the unprovoked standard

7

does not require a showing that the employer had a specific intent or desire to harm a specific employee. Under such a standard, an employee is relieved of showing the employer specifically wished the employee harm, rather the employee must only show the employer actually knew or consciously disregarded knowledge that employee injury would result from the employer's action. In other words, again, looking to our prior definition of physical aggression, an act of "unprovoked physical aggression" is one where the employer (1) committed an offensive action or hostile attack (2) aimed at the bodily integrity of the employee with (3) an unprovoked, i.e., general, intent to injure an employee.

Consistent with our decision in *Kearney*, both standards require aggression, which in turn requires an offensive action or hostile attack coupled with an intent to injure. However, the terms "physical," "willful" and "unprovoked," modify the term aggression to limit application of section 72-209(3) to situations where aggression is directed toward the bodily integrity of the employee and where the employer either specifically or generally intended injury.

Such an interpretation of "willful or unprovoked physical aggression," while not explicitly stated, is contemplated in our holding in *DeMoss v. City of Coeur D'Alene*, 118 Idaho 176, 795 P.2d 875 (1990). In that case, employees were instructed to remove old insulation from around a boiler. *Id.* at 177, 795 P.2d at 876. While removing the insulation, an experienced employee informed the employer that he thought the material being removed was asbestos. *Id.* After it was confirmed that the material was asbestos the employer provided inadequate protective gear to the employees and instructed them to continue removal. *Id.* The employees filed a complaint alleging that the employer's actions amounted to "willful or unprovoked physical aggression." We held that section 72-209(3) did not apply. In so doing we stated:

> The record discloses . . . that the plaintiffs all acknowledged that they had no reason to believe any of the defendants harbored ill feelings toward them or wanted to cause them injury in any manner. The record shows further that John Austin, the city welder, told defendant Eastwood that he thought the material might be asbestos. The record does not show that Eastwood or any of the defendants actually knew that it was asbestos until the test results from the laboratory were received. These test results were received after the appellants' first exposure to the asbestos had occurred. Moreover, while the protective clothing provided the workers prior to the second round of removal may indeed have been inadequate, that does not rise to the level of "unprovoked physical aggression."

118 Idaho at 179, 795 P.2d at 878. Our initial focus on the fact that there was no evidence the defendants harbored ill feelings toward the plaintiffs or wanted to cause them injury aligns with an analysis under "willful physical aggression," which requires a finding of a specific intent to harm. Our subsequent focus on the fact that the employer did not "actually kn[o]w" the material was asbestos until after the employees were exposed aligns with an analysis under "unprovoked physical aggression," which only requires a showing that the employer had actual knowledge that its actions would result in employee injury.

Mareks, however, assert that the section 72-209(3) exclusivity exception is triggered in situations where the employer engages in conduct that the employer knows or is substantially certain will result in injury to an employee. In short, Mareks urge this Court to adopt the definition of "intent" used in the common law of intentional torts.[5] In support of their argument, Mareks chiefly rely on Justice Huntley's concurrence in *Kearney* and this Court's decision in *Dominguez ex rel. Hamp v. Evergreen Res., Inc.*, 142 Idaho 7, 121 P.3d 938 (2005). Mareks' reliance on these cases is misplaced.

First, Justice Huntley's concurrence in *Kearney* refers to "instances where an employer's *knowing* ordering of an employee into an unsafe working environment would, in my judgment, rise to the level of willful physical aggression." 114 Idaho at 758, 760 P.2d at 1174 (Huntley, J., concurring) (emphasis added). Although Justice Huntley followed this language with citations to authorities that suggest a substantially certain standard, his own statement supports a strict knowing standard. Moreover, Justice Huntley's concurrence is exactly that—a concurrence. The majority opinion clearly states that even when an employer is "substantially certain that injury would occur" it is not sufficient to trigger the exclusivity exception. *Id.* at 757, 760 P.2d at 1173 (majority opinion). Thus, to the extent Mareks rely on Justice Huntley's concurrence to support the proposition that substantial certainty can satisfy the intent requirement under section 92-209(3), this argument fails.

Mareks' reliance on *Dominguez* fares no better. In *Dominguez*, an employee was ordered to wash out a steel tank that contained cyanide-laced sludge. 142 Idaho at 9, 121 P.3d at 940. The employee was not provided any protective equipment and was overcome by the cyanide gas while cleaning out the tank, resulting in severe and permanent injury. *Id.* at 9–10, 121 P.3d at

---

[5] Under the definition of intent used in intentional torts, a person acts with intent if "(a) the person acts with the purpose of producing that consequence; or (b) the person acts knowing that the consequence is substantially certain to result." Restatement (Third) of Torts § 1 (2010).

940–41. In his complaint, the employee alleged that the employer knew it was hazardous to enter the steel tank but concealed that knowledge from the employee. *Id.* The employee was permitted to bring a cause of action under the exclusivity exception because he alleged "a willful or unprovoked physical aggression by his employer, and therefore his claim [fell] into a statutory exception to the exclusive remedy rule." *Id.* at 12, 121 P.3d at 943.

It is important to note that *Dominguez* came before this Court on a default judgment. *Id.* at 13, 121 P.3d at 944 ("Upon default by the defendant, the allegations contained in the complaint are taken as true, and the plaintiff is relieved of any obligation to introduce evidence in support of those allegations."). As such, we specifically declined to review the underlying judgment in the case. *Id.* at 13–14, 121 P.3d at 944–45. That being said, *Dominguez* alleged that the employer *knew* entering the tank was hazardous but ordered the employee to do so anyway. *Id.* at 9, 121 P.3d at 940. Ordering an employee to accomplish a task where the employer is substantially certain injury will occur is different from having actual knowledge injury will result. Thus, Mareks' assertion that *Dominguez* supports the proposition that "recklessly directing an employee to work in a highly dangerous and unsafe environment" is tantamount to "willful or unprovoked physical aggression" misses the mark.

Ultimately, Mareks argue the Court should widen access to the exclusivity exception to include conduct that is substantially certain to result in injury. However, in *Kearney*, we unequivocally rejected an interpretation of aggression that includes substantial certainty. 114 Idaho at 757, 760 P.2d at 1173 ("It is not sufficient to prove that the alleged aggressor committed negligent acts that made it substantially certain that injury would occur."). Thus, to satisfy the level of intent required to trigger application of section 72-209(3) an employee must show the employer either (1) specifically intended to harm the employee or (2) engaged in conduct knowing employee injury would result.

In this case, Mareks contend that evidence tending to show that Hecla: (1) failed to secure engineer review and approval regarding the removal of the pillar; (2) did not heed warnings from experienced employees about the removal of the pillar; (3) failed to perform a safety review and follow safety standards; and (4) was significantly sanctioned by MSHA, is sufficient to support a finding that Hecla engaged in "willful or unprovoked physical conduct."

Notably, Mareks do not contend, and the record does not reflect, that Hecla specifically intended to injure Pete or Mike. Thus, there is no support for a finding that Hecla engaged in

10

"willful physical aggression." Furthermore, absent from Mareks' assertions is any allegation or supporting evidence that Hecla had actual knowledge the stope would collapse. Indeed, the evidence presented tends to show the opposite is true and Hecla thought the stope was safe.[6] Certainly, Hecla's failure to adhere to industry safety standards[7] and its failure to heed warnings from experienced employees[8] was negligent—even grossly so[9]—but there is no evidence in the record that would support a finding that Hecla had actual knowledge the stope would collapse.

This case is similar to *DeMoss*. In *DeMoss*, as related earlier, the employer was warned by an experienced employee that the material being removed was asbestos. However, the employer did not have actual knowledge that the material was asbestos until after it had been tested. *DeMoss*, 118 Idaho at 179, 795 P.2d at 878. Noting there was no evidence the employer specifically intended the employees harm or that the employer knew the material was asbestos before instructing the employees to remove the insulation, we held that the exclusivity exception did not apply. *Id.* Here, Hecla, like the employer in *DeMoss*, was warned by experienced employees about the danger in removing the pillar, but, again like the employer in *DeMoss*, there is no evidence Hecla actually knew the stope would cave-in or that injury would occur until the stope actually collapsed. Absent evidence that Hecla specifically intended to harm Mike or Pete or that Hecla had actual knowledge the stope would collapse, the district court did not err in granting Hecla summary judgment. *See id.*; *Kearney*, 114 Idaho at 757–58, 760 P.2d at 1173–74; *cf. Dominguez*, 142 Idaho at 9, 121 P.3d at 940 (holding the exclusivity exception applied where it was alleged that the employer knew it was hazardous to enter the cyanide laced tank); *Kearney*, 114 Idaho at 758, 760 P.3d at 1174 (Huntley, J., concurring) (noting that without

---

[6] Doug Bayer, Mine Superintendent and a mining engineer by training and former Chief Mining Engineer at the mine, reviewed the mining plan for the 6150-15-3 stope and determined that "I felt the 6150-15-3 stope was stable because of its V shape in a keystone-type orientation and with the horizontal pressures that I am familiar with in the Gold Hunter deposit." The mine's General Manager, John Jordan, who is also a mining engineer by training and a former Chief Mining Engineer at the mine, saw the plan in advance as well and testified: "I had no reason to believe that this mining configuration would not be stable. Based upon the information provided to me I felt that the mining configuration in the 6150-15-3 stope could be mined safely."

[7] MSHA heavily criticized, cited, and fined Hecla for its failure to follow safety guidelines and regulations.

[8] Tim Ruff, Hecla's former production geologist, raised concerns about the removal of the pillar to various members of Hecla's management. Similarly, Danny McGillis, a miner with 38 years of mining experience, also expressed concerns about the manner in which the pillar was being removed.

[9] In its order finding that Hecla violated applicable safety regulations MSHA stated: "Hecla created an unreasonable risk of harm" and found "that the violation was the result of Hecla's reckless disregard and unwarrantable failure to comply with the safety standard." MSHA also increased Hecla's fines due to "the serious safety hazard created by . . . Hecla's high negligence."

evidence the employer "knew the employee would operate the machine without the grass catcher" the exclusivity exception was not satisfied).

3. <u>Whether the district court erred in ruling that there were no disputed issues of material fact</u>.

In its decision granting Hecla summary judgment, the district court ruled that "there are no genuine issues of material fact on the issue of whether Idaho Worker's Compensation provides Plaintiffs their exclusive remedy." The court also stated, "[t]he Court finds that while there may be some disputed facts in the case at bar, such as whether Defendants received warnings that the mining practices were dangerous and whether it was necessary for the chief engineer to approve the mining plan, those disputed facts are *not* material[.]" Mareks argue that because the district court recognized there were disputed facts summary judgment was improper.

Summary judgment is proper when there are no genuine issues of material fact. I.R.C.P. 56(c); *Chandler v. Hayden*, 147 Idaho 765, 768, 215 P.3d 485, 488 (2009). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *E.g.*, *Houpt v. Wells Fargo Bank, Nat. Ass'n*, 160 Idaho 181, 186, 370 P.3d 384, 389 (2016) ("If reasonable people could reach different conclusions or inferences from the evidence, summary judgment is inappropriate.").

Here, questions about whether Hecla received warnings that the removal of the stope was dangerous or whether it was necessary for the chief engineer to approve the mining plan are immaterial. The question is whether Hecla specifically intended Mike or Pete harm or had actual knowledge that their mining practices would cause the stope to collapse. Even assuming Hecla did receive warnings that its mining practices were unsafe or that it failed to have the chief engineer review the mining, such evidence could, as discussed supra, only support a finding that Hecla was negligent, perhaps even grossly negligent.[10] However, negligence—no matter how gross—is insufficient to trigger the exclusivity exception under section 72-209(3). Absent evidence that Hecla specifically intended to harm Mike or Pete or that Hecla had received warnings that amounted to actual knowledge the stope would collapse, such as a report or an internal memo stating as much, the district court did not err in ruling that there were no disputed issues of material fact.

---

[10] *See supra* notes 7–9 and accompanying text.

4. <u>Whether the district court erred in holding that various respondents were immune from suit under Idaho Code section 72-209.</u>

Mareks argue that the district court erred in ruling that respondents Baker, Jordan, Bayer, Hogamier, Moore, and Stepro were also immune from liability. Mareks' argument in this regard is premised on the assumption that the district court erred in deciding that Hecla's conduct did not amount to "willful or unprovoked physical aggression." However, the district court was correct. Thus, respondents Baker, Jordan, Bayer, Hogamier, Moore, and Stepro were also immune from liability. I.C. § 72-209(3) ("The exemption from liability given an employer by this section shall also extend to the employer's surety and to all officers, agents, servants and employees of the employer or surety . . . .").

In summary, because there is no evidence that Hecla specifically intended to harm Mike and Pete or that Hecla had actual knowledge the stope would collapse the district court did not err in ruling that the exception to exclusivity under section 72-209(3) did not apply and that summary judgment for Hecla was proper.

**B. The district court did not err in denying Mareks' motion for reconsideration.**

Mareks contend that the district court erred in denying their motion for reconsideration. Hecla contends that the court lacked jurisdiction to hear the Mareks' motion because the motion failed to state with particularity the basis for the motion and was untimely filed.

1. <u>Mareks' motion was untimely filed</u>.

The district court entered its final judgment on May 5, 2015. Mareks filed a motion for reconsideration on April 29, 2015. The motion stated in its entirety:

> COME NOW the plaintiffs in the above-entitled action, by and through their undersigned counsel of record, pursuant to Idaho Rule of Civil Procedure 11(a)(2)(B), and hereby move this Court for reconsideration of its ruling as set forth in the Memorandum Decision and Order Granting Defendants' Motion for Summary Judgment and Denying Plaintiffs' Motion for Partial Summary Judgment, filed April 21, 2015.
> This motion will be based upon a supporting memorandum and affidavits filed in accord with the time requirements of the Idaho Rules of Civil Procedure as well as all other pleadings and papers on file in this action.

The supporting affidavit and memorandum were not filed until June 22, 2015, and August 4, 2015, respectively.

13

Idaho Rule of Civil Procedure 7(b)(3)(B) requires: "When a motion is supported by affidavits(s), the affidavit(s) shall be served with the motion . . . ." Mareks did not submit their supporting affidavit until over a month after serving the original motion. Furthermore, Idaho Rule of Civil Procedure 7(b)(1) provides that all motions "shall state with particularity the grounds therefor." Here, although Mareks identified the applicable civil rule of procedure in their motion and stated that they were seeking reconsideration of the court's summary judgment order, they failed to support the motion with argument or affidavits within the required fourteen day period. "A party cannot sidestep the requirement to file a motion within a certain period by filing an unsupported motion and promising support down the road." *Franklin Bldg. Supply Co. v. Hymas*, 157 Idaho 632, 642, 339 P.3d 357, 367 (2014). Although Idaho Rule of Civil Procedure 11(a)(2)(B) does not require a movant to support a motion for reconsideration with a brief or affidavit, "A movant who does so, however, must serve the affidavit [and brief] with the motion and within the period of time for filing of the motion." *Id.* Thus, while Mareks' motion for reconsideration was timely filed, they failed to timely support their motion. Consequently, the district court could have rejected both the affidavit and the memorandum and then denied the motion due to a lack of support.

That being said, the district court chose to accept the memorandum and the affidavit and hold oral argument on the motion. We review a district court decision to accept an untimely affidavit for an abuse of discretion. *Cumis Ins. Soc'y, Inc. v. Massey*, 155 Idaho 942, 946, 318 P.3d 932, 936 (2014). In *Marcher v. Butler*, 113 Idaho 867, 869, 749 P.2d 486, 488 (1988), we stated, "Rule 7 only says that the court *may* dismiss the motion without notice, and clearly does not require this . . . it is equally within the trial court's discretion to permit written or oral argument, even where such was not requested within fourteen days[.]" Accordingly, the trial court acted within its discretion by allowing Mareks to provide written and oral argument in support of their motion, even though the affidavit and brief were filed outside the fourteen day window.

2. <u>The district court did not err in denying the motion to reconsider on the merits.</u>

"The district court evaluates a motion to reconsider an order granting summary judgment by employing the summary judgment standard, and this Court uses that same standard to review the district court's order with respect to such a motion." *Franklin Bldg. Supply Co.*, 157 Idaho at 637, 339 P.3d at 362.

14

In their motion to reconsider, Mareks argued: (1) there was a mistake of law as to which party bore the burden on summary judgment; (2) there was a mistake as to the Mareks' scope of work on the date of the rock fall; and (3) the MSHA decision recognized the kind of conduct that would equate to "willful or unprovoked physical aggression." The district court confirmed its prior rulings on all three points. The district court was correct.

As discussed above, the district court correctly identified that Mareks bore the burden of establishing that the injury suffered fell within the section 72-209(3) exclusivity exception. *See supra* Part A.1. As to the scope of work argument, Mareks introduce no additional evidence to show Mike or Pete was explicitly directed to enter the stope. While they were likely still within the scope of their work by entering the stope,[11] the evidence tended to show that Hecla did not directly order them to enter the stope.[12] Moreover, without evidence that Hecla specifically intended them harm or had actual knowledge the stope would collapse, the question whether Mike and Pete were ordered into the stope is immaterial. Finally, in regard to the MSHA decision, Mareks point to the MSHA decision to support their argument that Hecla's conduct was substantially certain to result in injury. However, as discussed above, *supra* Part A.2, even if Hecla's behavior was substantially certain to result in injury, it would not rise to the level of "willful or unprovoked physical aggression." The district court's denial of Mareks' motion to reconsider is affirmed.

## C. Attorney Fees and Costs

Neither side requests fees. Mareks only request costs pursuant to Idaho Appellate Rule 40. "Costs are allowed as a matter of course to the prevailing party unless otherwise provided by law or order of the Court." I.A.R. 40(a). Mareks are not the prevailing party.

## IV. CONCLUSION

Because there is no evidence that Hecla specifically intended to harm Mike or Pete or that Hecla had actual knowledge the stope would collapse we affirm the district court's grant of summary judgment in favor of Hecla. Costs to Hecla.

Chief Justice J. JONES and Justice W. JONES, **CONCUR.**

---

[11] In its ruling on Mareks' motion for reconsideration, the district court stated: "[T]he general duty assignment to that stope was sufficient to constitute an authorization that they be in [the 6150-15-3 stope] watering the muck."

[12] The Mareks' shift supervisor testified: "At the beginning of the shift, I talked to [Mike and Pete], let them know that their stope was muckbound and that they would be working on cleaning the spray chamber and also repairing in the intersection right there." This testimony was corroborated by Mike's own testimony stating that he and his brother were told to work in the spray chamber but decided to wet down the stope as well. *See supra* note 2.

HORTON, J., specially concurring.

Although I join in the result reached by the Court, I am unable to completely join with my colleagues as to the meaning of the phrase "willful or unprovoked physical aggression." I do not view it necessary to define "willful" or "unprovoked" to resolve this appeal. However, as the Court has deemed it appropriate to do so, I would like to make it clear that I completely concur with the Court's continued reliance on *Kearney v. Denker*, 114 Idaho 755, 760 P.2d 1171 (1988). I further agree with the Court that that words "willful" and "unprovoked" modify the term "physical aggression." Finally, I concur with the Court's conclusion that "the term 'willful' when applied to 'physical aggression' requires that an employer deliberately or purposefully commit an act of physical aggression against an employee."

My disagreement lies in the Court's holding that "[a]n act of 'unprovoked physical aggression' … is one lacking in motive, deliberation, or specific purpose" which the Court equates with a "general intent to injure." This holding derives from reliance on a dictionary definition of "unprovoked" ("to rid of a motive, desire, or capability") that is incompatible with the plain meaning of the statute. I note first that "unprovoked," as used in Idaho Code section 72-209(3) is a past participle which modifies the phrase "physical aggression." The definition upon which the Court relies is that of a verb expressing the present tense. Setting aside this small matter, I accept that the Court has settled upon a definition of "unprovoked" as meaning "rid [the past participle] of a motive, desire, or capability." However, the definition adopted by the Court eliminates the statutory reference to provocation.

I view the word "unprovoked" as used in the statute as comprising the prefix "un-" and the past participle "provoked." The prefix means "not, lack of, the opposite of" or "the reverse or removal of: it is added to verbs to indicate a reversal of the action of the verb ... and to nouns to indicate a removal or release of the thing mentioned or from the condition, place, etc." *Webster's New World Dictionary* 1542 (2d College ed.1976). The verb "provoke" means "1. to excite to some action or feeling  2. to anger, irritate, or annoy  3. to stir up (action or feeling  4. to call forth; evoke." *Id*. at 1144. With these definitions in mind, I interpret the meaning of the participial phrase "unprovoked physical aggression" as "physical aggression occurring in the absence of provocation," i.e., not precipitated by, or resulting from, the words or actions of the employee who has been injured by the employer's physical aggression.

This brings me to the heart of my disagreement with the Court: the definition of "unprovoked" which it has adopted is inconsistent with its plain meaning in the context of this statute. It is easy to envision a situation where an employer or its agent engages in "physical aggression" that possesses the "motive, deliberation or specific purpose" of responding to provocation by the employee. Under the definition of "unprovoked" adopted by the Court, this would result in employer liability. I am not certain that such a broad result is desirable.

In my view, and applying my understanding of the word "unprovoked," Idaho Code section 72-209(3) is ambiguous, as there are clearly circumstances where the exception to the exemption from liability depends upon which of the two disjunctive adjectives is to be applied. Despite the Legislature's use of the disjunctive, in the real world both circumstances—willfulness and deliberate response to provocation—can co-exist. In the situation where an employer or its agent engages in willful physical aggression in response to provocation by the employee, my view is that determining which modifier should apply requires a fact-specific inquiry as to the nature and/or degree of the provocation.

This ambiguity, however, is of no significance to the present appeal. It is an issue that the Court may be required to address in the future in a case presenting markedly different facts. If and when that day comes, I do not believe that we should be burdened by a definition of "unprovoked" that is both wrong and unnecessary to the resolution of this case.

The meaning of the modifying adjectives "willful" and "unprovoked" assumes significance only in the presence of physical aggression. In this case, it is clear that there was no physical aggression by Hecla. As we said in *Kearney*, "[t]o prove aggression there must be evidence of some offensive action or hostile attack. It is not sufficient to prove that the alleged aggressor committed negligent acts that made it substantially certain that injury would occur." 114 Idaho at 757, 760 P.2d at 1173. As there was no evidence of an "offensive action or hostile" attack by Hecla, the district court correctly granted summary judgment. For that reason, I concur in the result reached by the Court.

Justice EISMANN, concurs.