**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 49695**

| | | |
|---|---|---|
| SAUL ARELLANO, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | **Rexburg, November 2024 Term** |
| | ) | |
| v. | ) | **Opinion Filed: May 19, 2025** |
| | ) | |
| SUNRISE HOMES, INC., and | ) | **Melanie Gagnepain, Clerk** |
| TRENT CHENEY, | ) | |
| | ) | |
| Defendants-Respondents. | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Madison County. Steven W. Boyce, District Judge.

The order of the district court is affirmed.

Law Office of Jean Jorgensen, Idaho Falls, for Appellant, Saul Arellano. Jean Jorgensen argued.

Kirton McConkie, Idaho Falls, for Respondents, Sunrise Homes, Inc. and Trent Cheney. David P. Gardner argued.

_____

MEYER, Justice.

Saul Arellano appeals from the district court's grant of summary judgment resulting in the dismissal of his negligence and negligence per se claims against Sunrise Homes, Inc., and Trent Cheney (collectively, "Sunrise Homes"). Arellano was injured while working as a roofer on a construction project. He received worker's compensation benefits through his statutory employer, Sunrise Homes, after it was discovered that his direct employer, Edgar Cuesta, did not carry worker's compensation insurance. Arellano later pursued negligence claims against Sunrise Homes, along with other claims that are not the subject of this appeal. Sunrise Homes moved for summary judgment on the negligence claims, maintaining that under Idaho's worker's compensation laws, those claims were barred by the exclusive remedy rule. Arellano opposed summary judgment, arguing that his negligence claims fell within the "unprovoked physical aggression" statutory exception to the exclusive remedy rule. The district court granted summary judgment in Sunrise Homes' favor, concluding that Arellano had failed to establish by clear and

1

convincing evidence that his negligence claims fell within the exception, and as a result, there were no genuine issues of material fact to prevent summary judgment and Sunrise Homes was entitled to judgment on those claims as a matter of law.

Arellano timely appealed the district court's order to this Court. For the reasons discussed below, we affirm the district court's order because Arellano did not raise a genuine issue of material fact that the "unprovoked physical aggression" exception applied to his case.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On October 28, 2020, Arellano was working as a roofer for Cuesta on a construction project for Sunrise Homes. It was cold that morning, and frost had accumulated on the roof of the building. Before Arellano began work, he had a brief conversation with Trent Cheney, the owner of Sunrise Homes. Arellano later began work on the roof of the shop. He was working at the peak of the roof without a safety harness or other fall protection equipment when he reached down for a utility knife and fell off the roof. Arellano hit his shoulder on the side of a parked RV during the fall and landed on the ground on his backside. Shortly after the accident, Cheney walked by the shop and saw Arellano on the ground. Arellano was taken to the hospital where he was treated for a fracture to his right foot. He later complained of additional injuries to both feet, his back, and his neck.

Arellano filed a claim for worker's compensation benefits, but Cuesta did not carry worker's compensation insurance. As a result, Sunrise Homes' insurance covered Arellano's claim. Arellano received $378.90 per week in lost wage benefits starting on October 29, 2020, and his medical bills, which totaled $7,880.79, were also paid through the worker's compensation process. Arellano later sued Sunrise Homes for negligence, negligence per se, fraud, and a wage claim. The fraud and wage claims are not part of this appeal.

Sunrise Homes moved for summary judgment on the basis that Arellano's negligence claims were barred by the exclusive remedy rule found in Idaho Code section 72-209(1). Arellano opposed Sunrise Homes' motion for summary judgment, countering that his negligence claims fell under the "unprovoked physical aggression" exception to the exclusive remedy rule. *See* I.C. § 72-209(3). He contended that the 2020 amendments to the exclusive remedy rule "drastically reduced" the "impossibly high burden" imposed by the previous version of the statute. Arellano argued that the depositions and the declarations from Cuesta and from Arellano's proposed OSHA expert, Edward Woodford, raised a genuine issue of material fact as to whether Arellano's injuries were proximately caused by Sunrise Homes' "unprovoked physical aggression." He claimed that

Cheney, as the owner of Sunrise Homes, "knew that by not utilizing fall protection equipment, injuries would occur from falls," and that "it was 'common sense' that there was a high risk of serious injury, or even death, if a laborer worked on a roof without protection from falls." Arellano noted that "OSHA regulations set forth the minimum standards that define the standard of care that is owed in a workplace in which an employee is working at a height of more than six feet—fall protection equipment must be provided." He argued that because Sunrise Homes "recognized the hazard of a fall and the severity of injuries that could result, [Arellano] has satisfied his burden to show sufficient evidence that by failing to provide any fall protection equipment from a frosty roof to a man without roofing experience constitutes an act of unprovoked physical aggression."

The district court granted Sunrise Homes' motion for summary judgment because it determined that Arellano failed to establish, by clear and convincing evidence, that his claims fell within the "unprovoked physical aggression" exception. It explained that Arellano failed to show that Sunrise Homes affirmatively ordered Arellano onto the roof or that Sunrise Homes had actual knowledge that injury or death to Arellano was substantially likely to occur because Arellano was working without fall protection equipment.

Arellano appealed the district court's order. On appeal, Arellano contends that the district court applied the wrong evidentiary standard to his motion in opposition to Sunrise Homes' motion for summary judgment. Arellano also argues that his negligence claims fall within the "unprovoked physical aggression" exception to the exclusive remedy rule and that Sunrise Homes' "flagrant disregard of OSHA safety standards" and "knowledge of the risk of injury or death resulting from a fall off a steep roof" supports the application of the exception. He maintains that Cheney's deposition testimony "reveal[ed] his knowledge and experience regarding the danger and potentially life-threatening injuries that arise from falls, and his inability to deny that failing to provide fall protection equipment created a dangerous job site[.]" Arellano argues again on appeal that the 2020 amendments to the exclusive remedy rule reduced the burden of proof placed on plaintiffs in terms of what they need to show for the exception to apply.

## II.    STANDARD OF REVIEW

"This Court employs the same standard as the district court when reviewing rulings on summary judgment motions." *Owen v. Smith*, 168 Idaho 633, 640, 485 P.3d 129, 136 (2021) (citing *Trumble v. Farm Bureau Mut. Ins. Co. of Idaho*, 166 Idaho 132, 140, 456 P.3d 201, 209 (2019)). "Summary judgment is proper if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." *Papin v. Papin*, 166 Idaho 9, 18–19, 454 P.3d 1092, 1101–02 (2019) (internal quotation marks omitted) (quoting I.R.C.P. 56(a)). "Summary judgment is improper 'if reasonable persons could reach differing conclusions or draw conflicting inferences from the evidence presented.'" *Nelsen v. Nelsen*, 170 Idaho 102, 114, 508 P.3d 301, 313 (2022) (quoting *Owen*, 168 Idaho at 641, 485 P.3d at 137). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Marek v. Hecla, Ltd.*, 161 Idaho 211, 220, 384 P.3d 975, 984 (2016). However, "a mere scintilla of evidence or merely casting a slight doubt of the facts will not defeat summary judgment." *Fragnella v. Petrovich*, 153 Idaho 266, 271, 281 P.3d 103, 108 (2012) (citation omitted). "[T]he trial court must liberally construe the facts, and draw all reasonable inferences in favor of the nonmoving party." *Id.* (citation omitted).

### III. ANALYSIS

**A. The district court erred by applying the wrong evidentiary standard on summary judgment.**

One of Arellano's claims on appeal is that the district court erred when it applied the "clear and convincing" evidentiary standard on summary judgment. We agree. "Review of our decisions shows that we have consistently rejected the invitation to depart from our traditional summary judgment principles—even when at trial a plaintiff would have to prove their case by clear and convincing evidence." *Kelso v. Applington*, 173 Idaho 738, 749, 548 P.3d 363, 374 (2024). We recently reaffirmed that "[s]ummary judgment should not involve the weighing of evidence and is granted only when there is an absence of a genuine dispute of a material fact[,]" including on those claims that require "clear and convincing evidence" at trial. *See id.*

In this case, the district court's order shows that the court applied a "clear and convincing" evidentiary standard in considering Arellano's declarations and memorandum in opposition to summary judgment instead of evaluating whether Arellano's evidence established a genuine dispute of a material fact. The order is peppered with statements by the district court that Arellano failed to establish certain facts by "clear and convincing evidence," including the key fact "that Sunrise Homes knew that injury or death to Mr. Arellano was substantially likely to occur." While the district court referenced the correct evidentiary standard on summary judgment, it analyzed Arellano's evidence based on the standard he would need to meet at trial:

> [W]hile the [c]ourt is cognizant that on a summary judgment motion the record must be construed in a light most favorable to the party opposing the motion, and

4

all reasonable inferences must be drawn in that party's favor, the [c]ourt still must also consider the underlying requirement for the exception to apply that there must be clear and convincing evidence to support the exception. For that reason, the [c]ourt determines that there is no genuine issue of material fact that the [Idaho Code section] 72-209(3) exception does not apply here.

Thus, Arellano is correct that the district court applied the wrong evidentiary standard to his claims at summary judgment. This error does not result in automatic reversal because this Court reviews the district court's decision on summary judgment de novo. As discussed below, summary judgment in Sunrise Homes' favor was proper because Arellano's negligence claims do not establish a genuine dispute of material fact that Sunrise Homes engaged in conduct that satisfies the "willful or unprovoked physical aggression" exception to the exclusive remedy rule.

**B. Summary judgment was proper because Arellano did not raise a genuine issue of material fact that would bring his claims within the exclusive remedy exception.**

Arellano argues that summary judgment was improper for several reasons: (1) Sunrise Homes' conduct amounted to "unprovoked physical aggression;" (2) he raised a genuine issue of material fact as to whether Sunrise Homes knew injury or death to Arellano was substantially likely to occur; (3) the 2020 amendments to Idaho Code section 72-209(3) show that the legislature adopted this Court's view of the exclusive remedy exception as articulated in *Gomez v. Crookham Co.*, 166 Idaho 249, 457 P.3d 901 (2020), *superseded by statute as stated in Hickman v. Boomers, LLC*, ___ Idaho ___, 554 P.3d 99, 106 (2024); and (4) that the 2020 amendments "drastically reduced" the burden of proof required by employees to bring their tort claims within the exception. We will discuss each argument in turn.

"Generally, under the exclusive remedy rule, an injured employee is limited to recovery in worker's compensation and cannot sue in tort." *Ewing v. State, Dep't of Transp.*, 147 Idaho 305, 307, 208 P.3d 287, 289 (2009) (citing *Fuhriman v. State*, *Dep't of Transp.*, 143 Idaho 800, 804, 153 P.3d 480, 484 (2007)). Idaho Code section 72-209(3) deviates from the exemption created by the exclusive remedy rule:

The exemption from liability given an employer by this section shall also extend to the employer's surety and to all officers, agents, servants and employees of the employer or surety, provided that such exemptions from liability shall not apply in any case where the injury or death is proximately caused by the willful or unprovoked physical aggression of the employer, its officers, agents, servants or employees, which physical aggression must include clear and convincing evidence the employer, its officers, agents, servants, or employees either specifically intended to harm the employee or engaged in conduct knowing that injury or death

5

to the employee was substantially likely to occur. The loss of such exemption applies only to the aggressor and shall not be imputable to the employer unless provoked or authorized by the employer or the employer was a party thereto.

I.C. § 72-209(3). The employee bears the burden of showing that the exception applies. *Marek v. Hecla, Ltd*., 161 Idaho 211, 215, 384 P.3d 975, 979 (2016). Historically, we have noted that this is a high bar to meet. *Clover v. Crookham Co.*, ___ Idaho ___, 561 P.3d 875, 883 (2024) (citing *Gomez v. Crookham Co.*, 166 Idaho 249, 258, 457 P.3d 901, 910 (2020) (citing previous Idaho Supreme Court cases going back to 1988 that showed the difficulty of establishing a claim under the "willful or unprovoked physical aggression" exception)).

1. Arellano failed to establish a genuine issue of material fact as to whether Sunrise Homes engaged in conduct knowing that injury to Arellano was substantially likely to occur.

In this case, Arellano argues that Sunrise Homes engaged in conduct by failing to provide fall protection equipment and that Sunrise Homes knew it was substantially likely that Arellano would be injured as a result. Ultimately, at trial, Arellano would need to establish both *knowledge* and *conduct* to remove his case from the realm of worker's compensation. On summary judgment, Arellano needed to raise a genuine dispute of material fact as to whether Sunrise Homes engaged in conduct knowing injury to Arellano was substantially likely to occur. Although Arellano's first argument related to Sunrise Homes' conduct, we will not resolve the question of whether the failure to provide fall protection equipment is considered "conduct" under the "unprovoked physical aggression" exception. As we discuss in more detail below, summary judgment in favor of Sunrise Homes was appropriate because Arellano failed to establish a genuine dispute of material fact related to Sunrise Homes' *knowledge*.

Arellano argues there is a genuine dispute of material fact with respect to Sunrise Homes' knowledge and that the district court erred when it granted summary judgment in Sunrise Homes' favor. Arellano points to Cheney's deposition testimony to support his argument that Sunrise Homes knew about the dangers of falling:

> [Arellano's counsel]. Do you agree that a fall from a roof may result in death?
> [Mr. Cheney]. I agree it is possible.
> [Arellano's counsel]. When did you first learn that?
> [Mr. Cheney]. I have no idea.
> [Arellano's counsel]. Is it a common sense thing, or are you actually learning it from --
> [Mr. Cheney]. No, it is just a common sense thing. If you fall on your head, it could kill you.

6

[Arellano's counsel].Do you agree that falls are the leading cause of death in the construction industry?

[Mr. Cheney]. I don't know that.

[Arellano's counsel]. Do you agree that a fall from a roof may result in serious injury?

[Mr. Cheney]. Possibly.

[Arellano's counsel]. Is that, again, a common sense thing?

[Mr. Cheney]. Yeah. Having fallen myself, I understand it can hurt.

During that same deposition, Cheney was questioned regarding his knowledge of OSHA regulations and safety standards:

[Arellano's counsel]. Do you attempt to comply with OSHA regulations?

[Mr. Cheney]. I attempt to, yes.

[Arellano's counsel]. How do you attempt to comply with OSHA regulations?

[Mr. Cheney]. By following what they specify we need to do.

[Arellano's counsel]. How do you do that?

[Mr. Cheney]. I'm not sure.

[Arellano's counsel]. Do you have kind of manuals or procedure books or anything like that?

[Mr. Cheney]. I do not.

[Arellano's counsel]. Have you ever taken any kind of training specifically in OSHA safety?

[Mr. Cheney]. I have not.

Cheney was questioned specifically about OSHA standards related to fall protection equipment:

[Arellano's counsel]. Do you know the height at which fall protection must be utilized?

[Mr. Cheney]. I don't know for sure.

[Arellano's counsel]. Just to be clear, have you ever received any kind of training regarding OSHA's fall protection standards?

[Mr. Cheney]. No.

. . . .

[Arellano's counsel]. Do you agree that OSHA requires the use of fall protection equipment for . . . work being done on the shop roof?

[Mr. Cheney]. I don't know that.

Arellano also questioned Cheney about whether Sunrise Homes provided fall protection equipment to its employees:

[Arellano's counsel]. Does Sunrise Homes provide its employees with fall protection equipment?

[Mr. Cheney]: No.

[Arellano's counsel]. Why not?

[Mr. Cheney]. It hasn't been necessary.

[Arellano's counsel]. When do you think it would be necessary to provide somebody with fall protection equipment?

[Mr. Cheney]. When we're working on really steep roofs, which we generally don't ever do.

[Arellano's counsel]. Do you sometimes work on steep roofs?

[Mr. Cheney]. Define "steep." Steep to me would be different than steep to you.

[Arellano's counsel]. Indeed.

[Mr. Cheney]. No. We don't ever work on steep roofs, per my definition of steep.

[Arellano's counsel]. How do you define steep roofs then?

[Mr. Cheney]. Any pitch over a 10/12 pitched roof.

Cheney testified regarding Cuesta's work on the shop roof:

[Arellano's counsel]. What were you asking Mr. Cuesta to do with respect to the shop?

[Mr. Cheney]. To do the roofing of the shop.

. . .

[Arellano's counsel]. What was the condition of the shop when he first started his work?

[Mr. Cheney]. How so?

[Arellano's counsel]. So the trusses were installed?

[Mr. Cheney]. Yes.

[Arellano's counsel]. And what I would call plywood?

[Mr. Cheney]. Plywood, sheathing. Yes. It was fully framed.

[Arellano's counsel]. Was [sic] there any permanent anchors installed on the roof to allow for use for [sic] fall protection equipment?

[Mr. Cheney]. No.

[Arellano's counsel]. Why not?

[Mr. Cheney]. That wasn't my job to provide that.

[Arellano's counsel]. Whose job was it?

[Mr. Cheney]. That would be the roofer's job.

We hold that Arellano did not submit evidence sufficient to raise a genuine issue of material fact as to whether Sunrise Homes engaged in conduct knowing death or injury to Arellano was substantially likely to occur. The deposition testimony and declarations provided by Arellano do not establish the knowledge element. The deposition testimony from Sunrise Homes does not establish that Sunrise Homes was aware that Arellano was an inexperienced roofer, or that he was going to go onto the roof without fall protection equipment, or that it was substantially likely that he would be injured as result. Arellano's conversation with Cheney the morning of the accident does not raise a genuine issue of material fact regarding Sunrise Homes' knowledge that Arellano was substantially likely to be injured while working on the roof. Even if Cheney saw Arellano without fall protection equipment earlier in the morning, that alone is insufficient to raise a genuine

issue of material fact as to Sunrise Homes' knowledge. The evidence offered by Arellano suggests that Sunrise Homes only became aware that Arellano was not using fall protection equipment shortly after the accident, when Cheney walked by the shop and saw Arellano on the ground.

Along the same lines, Arellano's argument that his OSHA expert's opinion raises a genuine issue of material fact as to Sunrise Homes' knowledge is unavailing. Woodford's expert opinion assumes knowledge on the part of Sunrise Homes based on OSHA regulations and standards related to roofing. The deposition testimony, however, shows Sunrise Homes' lack of knowledge with respect to *specific* OSHA standards regarding fall protection, and, by extension, a lack of knowledge that its acts or omissions were substantially likely to result in injury. Cheney's deposition testimony shows that he was unfamiliar with the specific OSHA regulations and safety standards related to fall protection equipment. Even if Cheney was injured in his own previous fall under distinctly different circumstances, that does not show that Cheney knew that Arellano was substantially likely to suffer an injury as a result of falling from the roof. When all the facts are construed in favor of Arellano, the evidence he offered does not establish that Sunrise Homes knew Arellano's injury was substantially likely to occur.

Recently, in *Clover v. Crookham Co.*, ____ Idaho ___, 561 P.3d 875, 887 (2024), we considered similar arguments related to a failure to follow OSHA regulations in connection with an employee's claim that the "unprovoked physical aggression" exception applied to his case. In *Clover*, the employee was injured in a workplace accident involving a drip tape lifter, a farm implement that lifts and then winds irrigation drip tape from fields onto a spool in the implement. *See id.* at 879. The employee in *Clover* argued that his employer's "disregard [of] or outright refusal to follow OSHA guidelines," based on evidence in the record, supported the application of the "unprovoked physical aggression" exception in his case. *Id.* at 887. We concluded that the employee failed to show his employer's *knowledge* of the OSHA guidelines that applied to the design of the drip tape lifter and *then consciously disregarded* them. *Id.* The employee did not point to evidence in the record establishing that his employer "was aware that OSHA applied to the design or operation of the drip tape lifter and disregarded that knowledge." *Id.* at 888. We agreed with the district court that the fact that the employer had "some knowledge of OSHA" did not equate to specific knowledge of OSHA requirements with respect to the drip tape lifter. *Id.* As a result, we affirmed the district court's decision granting summary judgment to the employer.

Although *Clover* concerned the previous version of the "unprovoked physical aggression" exception, its analysis with respect to the employer's knowledge of OSHA guidelines is relevant in this case. Similar to the employee in *Clover*, Arellano argues that Sunrise Homes' failure to follow OSHA standards regarding fall protection equipment supports the application of the "unprovoked physical aggression" exception. Although Woodford points to specific OSHA guidelines in his expert opinion, Cheney's deposition testimony shows that Sunrise Homes lacked knowledge of specific OSHA standards, including the standards related to fall protection equipment. As in *Clover*, here Arellano has failed to show that Sunrise Homes was aware that specific OSHA guidelines applied, including the regulations regarding fall protection equipment. The existence of OSHA standards and the failure to comply with those standards, alone, does not establish that Sunrise Homes engaged in conduct knowing that injury to Arellano was substantially likely to occur. Thus, Arellano's argument is unavailing and does not take this case outside of the realm of worker's compensation.

2. The 2020 amendments to the exclusive remedy rule did not codify the standard we articulated in *Gomez*.

Moving to Arellano's statutory interpretation arguments, we conclude that those arguments are unavailing. Arellano maintains that the 2020 amendments to the exclusive remedy rule adopted this Court's decision in *Gomez v. Crookham Co.*, 166 Idaho 249, 457 P.3d 901 (2020), *superseded by statute as stated in Hickman v. Boomers, LLC*, ___ Idaho ___, 554 P.3d 99, 106 (2024). We disagree. The exclusive remedy rule was amended to "clarify the intent of the Idaho Legislature with respect to the 'exclusive remedy' in worker's compensation." Statement of Purpose, S.B. 1321, 65th Leg., 2d Reg. Sess. (Idaho 2020). The amendment added a definition for the term "willful or unprovoked physical aggression," which was not defined in the previous version of the statute. *See* Act of Mar. 19, 2020, ch. 208, 2020 Idaho Sess. Laws 601, 602. "Willful or unprovoked physical aggression" is now defined or described by statute as: ". . . which physical aggression must include clear and convincing evidence the employer, its officers, agents, servants, or employees either specifically intended to harm the employee or engaged in conduct knowing that injury or death to the employee was substantially likely to occur." I.C. § 72-209(3). Nowhere in the definition of "unprovoked physical aggression" does the legislature reference the "consciously disregarded knowledge" standard this Court articulated in *Gomez*. We fail to see how the amended version of the statute functions as a "codification" of *Gomez*. We agree with the district court that the legislature's omission of the "consciously disregarded knowledge" language indicates the

10

legislature did not intend to adopt that standard. "This Court assumes that the legislature knew of existing precedent at the time it passed or amended a statute. When a statute is amended, however, it is presumed that the legislature intended the statute to have a meaning different from the meaning accorded the statute before amendment." *St. Luke's Reg'l Med. Ctr., Ltd. v. Bd. of Comm'rs of Ada Cnty.*, 146 Idaho 753, 758, 203 P.3d 683, 688 (2009) (quoting *Seward v. Pac. Hide & Fur Depot*, 138 Idaho 509, 512, 65 P.3d 531, 534 (2003)). Thus, to the extent that Arellano urges this Court to apply the "consciously disregarded knowledge" standard to Arellano's claims, we decline to do so.

3. The 2020 amendments to the exclusive remedy rule did not "drastically reduce" the plaintiff's burden of proof or make it easier for plaintiffs to remove negligence claims from the realm of worker's compensation.

Along the same lines, Arellano's argument that the 2020 statutory amendments "drastically reduced" the burden of proof placed on employees to bring their cases within the exception is unavailing. The fact that the legislature expressly included the "clear and convincing evidence" standard in the definition of "willful or unprovoked physical aggression" does not suggest an intent to lessen the burden of proof required under the exception. The plain language of the amended version of Idaho Code section 72-209(3) also does not indicate a broadening of the exception to include acts of simple negligence or negligence per se on the part of the employer. Historically, this Court has read the exclusive remedy rule to exclude claims of negligence. *See Marek v. Hecla, Ltd.*, 161 Idaho 211, 220, 384 P.3d 975, 984 (2016). Nothing in the revised language of the statute persuades us that the legislature intended to change that understanding. As a result, we hold that Arellano's negligence claims are barred by the exclusive remedy rule outlined in the amended version of Idaho Code section 72-209(3).

**C. Arellano is not entitled to costs on appeal.**

Arellano seeks costs on appeal under Rule 40(a). Because Arellano is not the prevailing party on appeal, he is not entitled to costs on appeal under Rule 40(a). As the prevailing party, Sunrise Homes is entitled to an award of costs on appeal under Rule 40(a).

## IV.   CONCLUSION

For the above stated reasons, the order of the district court is affirmed. Costs on appeal are awarded to Sunrise Homes.

Chief Justice BEVAN and Justices BRODY, MOELLER and ZAHN CONCUR.