**IN THE SUPREME COURT OF THE STATE OF IDAHO**
Docket No. 47304

CARL E. OWEN and ANITA R. OWEN, )
Husband and Wife, )
                                                )       **Boise, September 2020 Term**
   Plaintiffs-Counterdefendants- )
   Appellants, )
                                                )       **Opinion Filed: April 14, 2021**
v. )
                                                )
DERIK L. SMITH and JESSICA R. )       **Melanie Gagnepain, Clerk**
SMITH, Husband and Wife, )
                                                )       **SUBSTITUTE OPINION. THE**
   Defendants-Counterclaimants- )       **COURT'S PRIOR OPINION**
   Respondents. )       **DATED NOVEMBER 16, 2020**
_____ )       **IS HEREBY WITHDRAWN.**
                                                  )

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Minidoka County. Michael Tribe, District Judge.

The decision of the district court is <u>affirmed.</u> Attorney fees and costs on appeal are <u>awarded</u> to Respondents.

Carl E. Owen, Rupert, *pro se* for Appellant.

Donald J. Chisholm, Burley, attorney for Respondent.

_____

BEVAN, Chief Justice

## I. NATURE OF THE CASE

This appeal arises from a boundary dispute between Carl and Anita Owen ("Owens") and Derik and Jessica Smith ("Smiths"). In 2018, the Smiths bought property next to the Owens'. The Smiths then erected a fence along the boundary defined in a survey that was completed as part of their purchase agreement. The Owens disputed the boundary established by the 2018 survey and filed a complaint seeking damages for trespass, deprivation of real and personal property that was in the disputed area, loss in property value, and inability to inhabit and enjoy the property. The Smiths counterclaimed for quiet title and an easement guaranteeing them access to a buried irrigation pipeline that crossed the Owens' property. The parties each filed a motion for summary judgment. The district court granted the Smiths' motion for summary

judgment, holding the Owens had no right, title or interest in the disputed property and that the Smiths were bona fide purchasers with superior claim to any land described in their deed. The court also granted the Smiths permanent easement rights to the irrigation pipeline. The court dismissed the Owens' claims for trespass and conversion of personal property. The Owens timely appealed to this Court. We affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

In 1978, William and Eva Nichols divided land they owned in Rupert, Idaho, into five parcels. On May 17, 1978, Idaho Land Survey prepared a survey that showed the newly divided parcels. The 1978 survey was not recorded. The issues here stem from the boundary between two of the five parcels: Parcel 1, now owned by the Smiths, which is 27.65 acres; and Parcel 2, now owned by the Owens, which is 3.09 acres.

In 1979, the Nichols sold Parcel 2 to their son, David Nichols, through warranty deed, using the legal description from the 1978 survey. The warranty deed passed the property free of encumbrances. David Nichols later filed for bankruptcy, and the Owens bought Parcel 2 through a bankruptcy trustee deed recorded on September 8, 2008. The property was conveyed "as is," without representation or warranty. The Owens bought an ALTA extended title insurance policy which guaranteed their title to Parcel 2 by the description in the 1978 survey.

In 1983, the Nichols conveyed Parcel 1 to Walter Woodworth using the legal description from the 1978 survey. In 1989, Mr. Woodworth conveyed Parcel 1 to Albert and Mary Ann Dureau using the same legal description. Mr. Woodworth and the Dureaus lived in California and did not frequent the property. Beginning in 1990, the Dureaus leased 25.7 farmable acres of Parcel 1 to Lind Garner. Mr. Garner was not charged rent for the nonarable portions of the property, specifically a treed area on the north side of Parcel 1 that bordered Parcel 2. Around 1995, Mr. Garner testified that he and Mr. David Nichols, the owner of Parcel 2 at the time, created a small berm near the trees to keep the irrigation water from Parcel 2 off the crops Mr. Garner was growing on Parcel 1. Without specifying how long it had been there, Mr. David Nichols testified there was a berm and built up ground between the parcels that kept his irrigation water from going onto the alfalfa field on Parcel 1 and at some point he and Mr. Garner "enhanced" the natural berm to a higher level.

2

After Mr. Dureau died in 2011, Ms. Dureau conveyed the property to a survivor's trust. In 2018, the Smiths bought Parcel 1 from the Dureau trust through a warranty deed recorded on April 11, 2018. During the process of acquiring title insurance for the sale, it was discovered that the County Assessor would need an updated legal description for the property. Thus, as a condition of the purchase agreement, the Smiths required Ms. Dureau have the property surveyed. On March 23, 2018, Trevor Reno of Desert West Land Surveyors surveyed Parcel 1. Mr. Reno concluded that the surveyor who prepared the 1978 survey incorrectly located the $1/16^{th}$ center corner of the NE1/4 of Section 7 about 3.8 feet west and 1.1 foot north of its correct location. Mr. Reno testified that the monument for the correct $1/16^{th}$ corner was established by Steven Pearson in a 1993 survey performed for another landowner. That point has been used and accepted for all surveys in the surrounding area since 1993, including surveys conducted by Stanley Carper and Durrell Moon of Moon & Associates in 1993 and 1994. Mr. Reno conducted the 2018 survey from the correct $1/16^{th}$ corner. Thereafter, a land surveyor intern for Desert West Surveyors placed wooden survey stakes with flags along the boundary identified in Mr. Reno's 2018 survey. The 2018 survey was recorded on April 2, 2018.

After receiving the results of the 2018 survey, Mr. Smith testified that he visited the property and did not observe any fence or feature along the common boundary of the Owens' parcel that would suggest anyone was using or encroaching on Parcel 1. After the sale had closed, Mr. Smith placed T-post markers along the boundary identified in the 2018 survey. As he was placing the markers, Mr. Smith was approached by Mr. Owen who claimed his property line extended to the irrigation berm at the edge of the cultivated field on the Smiths' property – contrary to the results of the 2018 survey. In June 2018, Mr. Owen installed a fence consisting of T-posts and wire, and attached "No Trespassing" signs on the disputed property. Mr. Smith demanded that the fence be removed. Between April and September 2018, the parties were unable to negotiate an agreement to their boundary dispute. On September 14, 2018, Mr. Smith built a 3-strand barbed wire fence along the 2018 survey line. Portions of the fence ran over personal property the Owens had left on the property.

## B. Procedural Background

On September 25, 2018, the Owens, acting pro se, filed a "Civil Complaint for Trespassing and Suit for Damages and Relief," which included a demand for a jury trial. The Owens sought damages for trespass, deprivation of real and personal property, loss in property

3

value, and inability to inhabit and enjoy the property because of the Smiths' erection of the fence on what they claimed was their property. The Owens alleged that for several decades the disputed strip, which included a garden spot, a special Christmas tree, an asparagus patch and grape patch, had been maintained, irrigated, mowed, and kept in good condition by the owners of Parcel 2. In response, the Smiths filed a motion for more definite statement and motion to strike. The Smiths alleged that the Owens' complaint was too verbose, contained inadmissible evidence, and failed to contain a short and plain statement of the claims for relief sought. The Owens opposed the Smiths' motion.

The Owens filed a motion and affidavit for entry of default. After a hearing, the district court denied the Owens' motion for default and ordered the Owens to file an amended complaint that concisely stated their claims, narrowing the evidence to a short and plain statement of the supporting facts. On October 30, 2018, the Owens filed an amended complaint. The Smiths answered the amended complaint and filed a counterclaim which sought two things: (1) quiet title to the disputed land; and (2) a judgment recognizing the Smiths' entitlement to use, operate, repair, maintain, and replace the irrigation diversion features and buried pipeline that run across the Owens' property at their present location. The Smiths claimed their property had a permanent easement to use and maintain the irrigation works and pipeline along the west boundary of the Owens' property.

On November 8, 2018, the Smiths filed a motion for an order allowing a survey of the Owens' property. The Owens opposed the motion, arguing that another survey would not resolve any of the issues raised in the amended complaint and would cause them to incur undue expenses. The district court denied the Smiths' motion for a survey without prejudice and entered an order of mediation. The judge explained that the Owens' property was probably going to be surveyed, but thought that it should be done in the context of a mediation.

After the parties were unable to resolve their dispute through mediation, the Owens filed their own motion for an order requiring a survey of both Parcel 1 and Parcel 2. The Smiths opposed the Owens' motion, arguing that they were confident in the survey Mr. Reno had conducted before their purchase of Parcel 1 and there was no economic reason for another survey of their property. The Smiths also pointed out that the Owens objected to their request to have Parcel 2 surveyed for $600–700 due to cost, but were now proposing a joint survey that was estimated to cost around $3,000. The Owens explained that they thought a single survey of both

4

parcels would be more expedient because it was less likely to lead to another dispute where two surveyors would get together and each defend their position.

During the hearing on the Owens' motion, the district judge recused himself after the Smiths' attorney raised concerns that his clients were being treated unfairly. The allegations stemmed from the judge's comments that Smith's attorney had made inflammatory statements towards the Owens. The judge recused himself without ruling on the motion or determining whether there was actual bias. The case was reassigned to a new district judge, Judge Tribe.

Although it is not included in the record, the Owens apparently withdrew their motion to have both properties surveyed. The Smiths then renewed their motion for an order allowing a survey of the Owens' property and the Owens filed a renewed opposition. After a hearing, the district court entered an order allowing a survey of the Owens' property. The judge noted that the Owens would have ample opportunity to challenge the survey if they believed it was not done properly. On March 12, 2019, the same surveyor who surveyed Parcel 1, Trevor Reno of Desert West Surveyors, surveyed the Owens' property. A copy of the 2019 survey was not included in the record on appeal. Mr. Reno testified the 2019 survey showed there was no overlap or gap between the legal description of the Owens' property as determined under the 1978 survey and the legal description of the Smiths' property as determined in the 2018 survey. Mr. Reno opined the difference arose along the common boundary line due to the incorrect and improper location of the NE center 1/16th corner established by the 1978 survey. Further, Mr. Reno advised that the 2018 survey actually decreased the Smiths' acreage from 27.65 to 27.48, and the 2019 survey increased the Owens' property from 3.09 to 3.10 acres.

On April 19, 2019, the Owens filed a motion for summary judgment. The Owens argued that they were entitled to summary judgment because the Smiths had knowingly trespassed onto their property that was posted with "No Trespassing" signs. They also argued that the Smiths engaged in self-help by building a barbed wire fence through the Owens' property, which took and willfully deprived the Owens of both real and personal property. In support, the Owens filed an affidavit from David Nichols, the previous owner of Parcel 2. Mr. David Nichols testified that he maintained a grape patch, asparagus patch, and garden spot up to the cultivated field on Parcel 1 until he had to relinquish his property due to bankruptcy. Mr. Nichols also testified that when his parents sold Parcel 1 to Walter Woodworth in 1983, Mr. Woodworth and Mr. David Nichols agreed the trees Mr. David Nichols planted on the edge of the cultivated field were the boundary

line between the properties. The Owens also filed a separate statement of genuine material facts not in dispute. The Smiths moved to strike the affidavit of David Nichols.

On April 26, 2019, the Smiths filed their own motion for summary judgment. The Smiths argued that none of the real property described in the bankruptcy trustee deed conveying Parcel 2 to the Owens was situated within the boundaries of the Smiths' property described in the warranty deed from the Dureau trust, which contained the legal description from the 2018 survey. The Smiths asserted that Mr. Smith had walked the property before closing and did not observe any fences, monuments, or cultivation of property that would notify him that a portion of Parcel 1 was being occupied by the Owens. The Smiths also alleged a pump and pipeline easement along the western boundary of the Owens' property were in place before the Owens' purchase of Parcel 2 and had been installed to serve Parcel 1. The Smiths alleged the owners of Parcel 1 had used the easement without objection from at least 1990 to 2018.

On May 6, 2019, the Owens filed a motion for leave to file an amended complaint adding a claim for punitive damages. The Smiths opposed the Owens' motion for punitive damages. On May 24, 2019, the Owens filed a motion for injunctive relief, asking the court to order the Smiths to remove the fence they had erected until the issues were resolved at trial. The Smiths opposed the Owens' motion for injunctive relief.

On July 29, 2019, the district court entered a memorandum decision granting the Smiths' motion for summary judgment and denying the Owens' motion for summary judgment. First, the district court granted the Smiths' motion to strike the affidavit of David Nichols in part. The court struck several attachments and portions of the affidavit discussing the boundary between Parcel 1 and Parcel 2 for lack of foundation and impermissible legal conclusions. The court then held that the Owens had no right, title or interest in the property described in the Smiths' deed. The court also held the Smiths were bona fide purchasers with a superior claim to any land described in the same instrument. The court held the Smiths and their successors in interest had a permanent easement for irrigation purposes and the Owens were prohibited from interfering with the irrigation equipment from the canal to the Smiths' property. The court dismissed the Owens' claims for trespassing and conversion of personal property.

On August 6, 2019, the Smiths filed a memorandum of fees and costs seeking attorney fees under Idaho Code section 12-121. The Smiths filed an affidavit of counsel in support detailing the attorney fees billed. The Owens argued that they filed nothing frivolously and

objected to the Smiths' memorandum of fees and costs. On August 9, 2019, the district court entered a judgment dismissing the Owens' claims with prejudice and granting the Smiths' counterclaims. On August 13, 2019, the Smiths moved to amend the judgment to contain additional language resolving the property dispute. On September 12, 2019, the district court entered a memorandum decision awarding costs and attorney fees to the Smiths. On the same day, the court entered an amended judgment. The Owens timely appealed to this Court.

### III. ISSUES ON APPEAL

1.    Did the district court erroneously grant summary judgment in favor of the Smiths?

2.    Did the district court abuse its discretion in awarding attorney fees and costs to the Smiths?

3.    Did the district court err by failing to rule on the Owens' motions for leave to file punitive damages and injunctive relief?

4.    Have the Owens adequately raised judicial bias on the part of the second presiding judge?

5.    Are the Smiths entitled to attorney fees on appeal?

### IV. STANDARD OF REVIEW

This Court employs the same standard as the district court when reviewing rulings on summary judgment motions. *Trumble v. Farm Bureau Mut. Ins. Co. of Idaho*, 166 Idaho 132, 140–41, 456 P.3d 201, 209–10 (2019) (citing *La Bella Vita, LLC v. Shuler*, 158 Idaho 799, 804–05, 353 P.3d 420, 425–26 (2015)). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). A moving party must support its assertion by citing particular materials in the record or by showing the "materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact[s]." I.R.C.P. 56(c)(1)(B). Summary judgment is improper "if reasonable persons could reach differing conclusions or draw conflicting inferences from the evidence presented." *Trumble*, 166 Idaho at 41, 456 P.3d at 210 (quoting *La Bella Vita*, 158 Idaho at 805, 353 P.3d at 426). Even so, a "mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment." *Id.*

"Pro se litigants are not entitled to special consideration or leniency because they represent themselves." *PHH Mortg. v. Nickerson*, 164 Idaho 33, 38, 423 P.3d 454, 459 (2018) (internal citation omitted). Rather, "[p]ro se litigants must conform to the same standards and

7

rules as litigants represented by attorneys, and this Court will address the issues accordingly." *Id.* (quoting *Mendez v. Univ. Health Servs. Boise State Univ.*, 163 Idaho 237, 242, 409 P.3d 817, 822 (2018)).

# V. ANALYSIS

## A. We affirm the district court's grant of summary judgment for the Smiths.

The Owens allege the district court erred in granting summary judgment for the Smiths in several respects. We will address each issue in turn.

### a. Boundary dispute

The Owens' primary argument on appeal is that Trevor Reno's 2018 survey wrongly identified the boundaries of the Smiths property.[1] That said, there is no evidence in the record that the Owens ever hired their own surveyor to refute Mr. Reno's findings. Instead, the Owens insist that the 1978 survey was not erroneous. Mr. Owen testified that the 2018 survey and the Smiths' corresponding legal description caused an overlap with the Owens' property description based on the 1978 survey. This contradicts Mr. Reno's testimony that there is no overlap or gap between the two legal descriptions; the Owens contend there is a difference in measurements of record along the common boundary line from the 1978 survey and actual measurements as observed by the 2018 and 2019 surveys. Even so, there is no evidence that Mr. Owen was qualified to testify to the accuracy of either the 1978 or the 2018 survey. The Owens' failure to submit any admissible evidence to support their claim that the 2018 survey was incorrect – other than Mr. Owen's affidavit – cannot create an issue of material fact. *See Holdaway v. Broulim's Supermarket*, 158 Idaho 606, 612, 349 P.3d 1197, 1203 (2015) (holding that an injured party's testimony about the medical cause of a post-operative internal injury would require knowledge outside the "usual and ordinary experience of the average person," thus, it did not create an issue of material fact sufficient to preclude summary judgment). Ultimately, the Owens could "not rest upon the mere allegations or denials of . . . [their] pleadings," but had to respond with admissible evidence "set[ting] forth specific facts showing there is a genuine issue for trial." I.R.C.P. 56(e). Mr. Owen's affidavit does not meet this threshold.

---

[1] The Owens make several allegations that Mr. Reno violated the Rules of Professional Responsibility by failing to notify "the Board" of any discrepancy. The Owens also allege Mr. Reno violated Idaho Survey rules by having an intern employee place wooden stakes along the boundary he identified in the 2018 survey. Mr. Reno is not a party to this action and any claims that he caused the Owens' alleged harm will not be considered.

The Owens also take issue with the following boilerplate disclaimer on Mr. Reno's 2018 survey:

> This survey was completed by the surveyor without the benefit of a title policy, title commitment, or any other form of a title search. Easements, encumbrances and any other special exceptions to the property have not been provided to or researched by the surveyor. This survey was not completed to the ALTA/ACSM standards. Surveyed property is subject to all easements, encumbrances and any other special exceptions currently existing or of public record.

The Owens allege "[r]elying on a survey with such a large disclaimer disavowing any research necessary to establish a boundary line between two adjoining parcels is absurd." That said, Mr. Reno testified that the title policy note does not reflect on the accuracy of the survey; rather, it was intended to advise users that it did not address any additional issues that would be required for its use in an ALTA title insurance policy. Ultimately, the accuracy of Mr. Reno's 2018 survey of Parcel 1 was confirmed in 2019, when Mr. Reno surveyed Parcel 2. Mr. Reno determined there was no overlap or gap between the legal description of the Owens' property determined under the 1978 survey and the legal description of the Smith property as determined in the 2018 survey. Mr. Reno stated that the difference arose along the common boundary line because of the incorrect and improper location of the NE center 1/16th corner established by the 1978 survey. The Owens provided no admissible evidence to dispute Mr. Reno's findings on the boundaries of Parcel 1 and Parcel 2.

Rather than focus on the Owens' arguments about the alleged discrepancy between the 1978 and 2018 surveys, the district court saw this case as a claim for boundary by agreement. In their reply brief on appeal the Owens assert they have never claimed boundary by agreement to the disputed property. That said, the substance of the Owens' argument emphasizes that the Smiths "could not have missed [their] decades old grape patch fence, [ ] riding lawnmower, [ ] garden tools, [ ] garden spot, [ ] fencing supplies and other equipment and tools that clearly gave notice that [the Owens] were possessing, maintaining, using, and cultivating the property in dispute." The Owens argue that aerial photos show two distinct properties: a clearly defined agricultural property and a clearly defined residential property encircled by trees. Thus, despite their contentions otherwise, it appears the Owens are making a claim for boundary by agreement.

"Boundary by agreement or acquiescence has two elements: (1) there must be an uncertain or disputed boundary and (2) a subsequent agreement fixing the boundary." *Cecil v. Gagnebin*, 146 Idaho 714, 716, 202 P.3d 1, 3 (2009) (quoting *Downey v. Vavold*, 144 Idaho 592,

9

595, 166 P.3d 382, 385 (2007)). "A long period of acquiescence by one party to another party's use of the disputed property provides a factual basis from which an agreement can be inferred." *Boyd-Davis v. Baker*, 157 Idaho 688, 693, 339 P.3d 749, 754 (2014) (quoting *Griffel v. Reynolds*, 136 Idaho 397, 400, 34 P.3d 1080, 1083 (2001)). However, acquiescence, by itself, does not constitute a boundary by agreement. *Id.* This Court has held that a fence or other visible demarcation is necessary to give later purchasers constructive notice of the agreed-upon boundary. *Cecil*, 146 Idaho at 717, 202 P.3d at 4; *Paurley v. Harris*, 75 Idaho 112, 117, 268 P.2d 351, 353 (1954); *Neider v. Shaw*, 138 Idaho 503, 506, 65 P.3d 525, 529 (2003).

The Owens argue that the edge of the cultivated field or berm had been the accepted boundary line between the two parcels for decades. On the other hand, the Smiths maintain there is no evidence the Owens had an agreement with the prior owners of Parcel 1 about the location of the boundary. Mr. Woodworth and the Dureaus were California residents who did not frequent the property and the Owens provided no evidence that Mr. Woodworth or the Dureaus acknowledged or acquiesced in the incursion upon their property by Mr. David Nichols or the Owens. Indeed, Ms. Dureau testified that to the extent "neighbors to the north" (the Owens) were using part of Parcel 1, it was done without her knowledge. The Smiths allege the most the Owens have shown is that they encroached on the property now owned by the Smiths to different degrees at different times and intervals.

The district court found the facts of *Cox v. Clanton*, 137 Idaho 492, 50 P.3d 987 (2002) to be analogous to this case. In *Cox*, the appellants believed a fence constituted an implied agreement for the boundary between two properties and made several improvements up to the fence line. *Id*. at 493, 50 P.3d at 988. The respondents did not know about the improvements because they rented their land to ranchers. *Id*. After a survey revealed the fence did not represent the boundary in their recorded deed, the appellants filed an action to quiet title, arguing the fence line should be the boundary based on a theory of boundary by agreement. *Id*. at 494, 50 P.3d at 989. The respondents argued the boundary lines in the deeds should stand because the fence was built to contain cattle and there was no discussion or agreement between the adjoining landowners regarding the actual boundary. *Id*. This Court affirmed the district court's grant of summary judgment for the respondents, holding that although the actual boundary was unclear, appellants were unable to establish an express or implied agreement to treat the fence as the boundary. *Id*. at 495, 50 P.3d at 990.

Similarly, at all times the Owens allege they were maintaining and making improvements to the property up to the irrigation berm, the majority of the land on Parcel 1 was being farmed by Lind Garner. Mr. Garner leased the 25.7 farmable acres of Parcel 1 from the Dureaus beginning in 1990 until the Dureaus sold the property to the Smiths. Mr. Garner testified that around 1995, he and Mr. David Nichols created a small berm to keep the irrigation water off of Parcel 2. Mr. Garner testified that the berm was created to keep water off his crops, not to signify a boundary between the two parcels. Further, as the lessor of the property, Mr. Garner did not have authority to make any kind of boundary revision or agreement on behalf of Ms. Dureau. *Fischer v. Croston*, 163 Idaho 331, 337, 413 P.3d 731, 737 (2018) (an agreement changing the boundary line must be between the actual owners of the adjacent properties or an agent of an owner). Ms. Dureau testified that she did not know that Mr. Garner and Mr. David Nichols had created the berm and confirmed that Mr. Garner did not have authority to agree to change the boundary of her property. The Owens contend that the Smiths' attorney drafted Mr. Garner's affidavit and introduced it to contradict Mr. David Nichols affidavit but that it is "unworthy of belief." The crux of the Owens' argument appears to be that although Mr. Garner helped Mr. David Nichols *enhance* the irrigation berm, the berm had existed for decades before Mr. Garner began farming Parcel 1. Even if a preexisting berm was only enhanced in 1995, there is no evidence the berm was ever intended to alter the boundary line. Instead, the berm was intended to prevent water from Parcel 2 from damaging Mr. Garner's crops on Parcel 1.

Although the Owens dispute the location of the boundary line, to prevail on a claim for boundary by agreement they must also show there was an agreement fixing the boundary. *Cecil*, 146 Idaho at 716, 202 P.3d at 3. Ms. Dureau testified that to the extent that neighbors owning Parcel 2 were using part of Parcel 1, it was done without her knowledge. The district court found the alteration of the landscape and the decision to allow the nonarable portions of the property to remain uncultivated did not amount to an agreement between the owners – and thus did not alter the legal boundaries established in the deed. This conclusion was correct.

The district court also held that the Smiths were bona fide purchasers because they were unaware of any claim to the property they were purchasing. In Idaho, "the first recorded conveyances of real property, taken in good faith and for valuable consideration . . . have priority over subsequent purchasers or mortgagees of the same property." I.C. § 55-812. The term "good faith" has been defined as one "who acquired real property without actual or constructive notice

11

of another's claim or of any defect in title." *Benz v. D.L. Evans Bank*, 152 Idaho 215, 226, 268 P.3d 1167, 1178 (2012). Mr. Smith testified he visited the property before the sale and observed nothing that would reveal a prior claim: there was no cultivated area or monument to show that the disputed land was being used by another. Mr. Owen admitted that he had not cultivated the garden spot since 2016 due to health issues. Additionally, before purchasing Parcel 1 the Smiths were informed they needed an updated legal description to obtain title insurance. Mr. Reno conducted the required survey on March 23, 2018. The legal description in the deed conveying Parcel 1 from the Dureau trust to the Smiths was taken from Mr. Reno's 2018 survey. The boundary established by that deed was the first recorded in relation to the boundary between Parcels 1 and 2. Thus, the district court properly held that because the Smiths recorded their deed in good faith for valuable consideration they had priority over any subsequent claims to the property.

### b. Irrigation rights

Next, the Owens allege the district court impermissibly granted the Smiths a permanent easement to the irrigation pipeline on their land. The Owens focus their argument on an easement granted to Mr. David Nichols in 1979. On November 9, 1979, the Minidoka Irrigation District ("MID") granted an easement to Mr. David Nichols for construction and maintenance of irrigation systems on Parcel 2. The Owens maintain that the grant for the pump, waterworks and right of way easement to MID's 40-foot right of way passed to them free of encumbrances when they bought Parcel 2. However, whether Mr. David Nichols was granted an easement on Parcel 2 is independent of whether an easement also could have been granted to Parcel 1.

The Smiths' property is irrigated with MID water diverted from the canal at the northwest corner of the Owens' property. The water is delivered through a buried pipeline in the 125 West Road right of way. Before dividing the five parcels in 1978, William and Eva Nichols obtained approval from the Minidoka Highway District for the installation of the pipeline within the 125 West road right of way.[2] The district court held that the easement for the pipeline would have

---

[2] Susan Allen, secretary of the Minidoka County Highway District, submitted an affidavit stating that the easement which was approved for William Nichols was located at 125 West 276 North. But the attached minutes from a meeting of the Board of Commissioners on March 7, 1977, show that a pipe easement was actually granted to 125 West 275 North. The Owens contend that "[s]ince [the Smiths' attorney] drafted and charged for drafting Susan Allen's affidavit, and he received a judgment giving his client our pipeline, it can be inferred that the address error was intentional and deliberate to support an untenable argument." 125 West 276 North is actually the Owens'

12

passed through the division of the property and subsequent sales down the chain of title to the Smiths. Indeed, Idaho Code section 55-603 provides "[a] transfer of real property passes all easements attached thereto, and creates in favor thereof an easement to use other real property of the person whose estate is transferred, in the same manner and to the same extent as such property was obviously and permanently used by the person whose estate is transferred, for the benefit thereof, at the time when the transfer was agreed upon or completed." The Smiths emphasize that the Owens' ALTA insurance also notes "the existence of irrigation pipeline and equipment along the west boundary" that could be subject to an easement.

Further, the irrigation equipment was buried and in use before the Owens bought their property in 1998. Mr. Garner testified that he irrigated Parcel 1 with MID water diverted from the B-1 canal through a buried mainline along the northwest corner of the Parcel 2 since he began leasing the 25.7 farmable acres of Parcel 1 in 1990. The Smiths admit they have been unable to determine who installed the pump and pipeline to serve Parcel 1, but claim it was done before 1990 with the knowledge of Mr. David Nichols, who owned Parcel 2 from 1979 until 2008. There is no evidence the Owens ever objected to the previous Parcel 1 owners' use of the irrigation pipelines. The district court properly granted the Smiths' motion for a permanent irrigation easement over Parcel 2.

### c. Taking of personal property

After listing their issues on appeal, the Owens assert those issues encompass the district court's failure to address their proven damages for theft of personal property. The Owens allege that 90-95% of their personal property in the disputed area was removed and taken within 5-10 days of the Smiths erecting their fence. The district court dismissed the Owens' claim after finding they did not provide any evidence in the record to support their claims that the Smiths were responsible for the loss of any of their personal property. We affirm the district court's dismissal of these claims. The Owens have merely submitted conclusory allegations that the Smiths were responsible for their missing property without providing any corroborating evidence. Mere conclusory allegations cannot raise a genuine issue of material fact. *Gordon v. U.S. Bank Nat'l Ass'n*, 166 Idaho 105, 119, 455 P.3d 374, 388 (2019).

### d. Separate statement of facts.

property, Parcel 2. The Owens maintain that 125 West 275 North is across the highway from Parcel 1, however there is no support for that allegation in the record.

Alternatively, the Owens argue the district court improperly granted summary judgment for the Smiths when the Smiths disregarded the requirement of the court's scheduling order that they file a separate statement of undisputed facts as part of their papers supporting their motion for summary judgment. The Owens argue that because the Smiths failed to file a separate statement of undisputed facts they did not have the opportunity to controvert the Smiths' allegations. The Owens claim their uncontroverted genuine material facts should have been accepted as true, requiring summary judgment in their favor.

Although the Smiths did not file a *separate* statement of undisputed facts, the Smiths detailed the relevant facts of the case in their memorandum in support of their motion for summary judgment. Thus, the Owens' claim that they had no notice of what facts the Smiths were relying on lacks merit. "A party alleging error on appeal must also show that the alleged errors were prejudicial. Alleged errors not affecting substantial rights will be disregarded." *Baughman v. Wells Fargo Bank, N.A.*, 162 Idaho 174, 179, 395 P.3d 393, 398 (2017) (internal quotation and citations and omitted). The Smiths' failure to file a separate statement of undisputed facts did not prejudice the Owens.

### e. *Striking of David Nichols' affidavit*

In their reply brief, the Owens contest the district court's memorandum decision striking portions of David Nichols' affidavit. The Owens maintain there was no valid reason to strike any portion of the affidavit and argue the district court struck the affidavit at an inappropriate time by doing it at the same time as the summary judgment decision. In general, this Court will not consider arguments raised for the first time in an appellant's reply brief. *Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005) (citing *Myers v. Workmen's Auto Ins. Co*., 140 Idaho 495, 508, 95 P.3d 977, 990 (2004)). A reviewing court looks only to the initial brief on appeal for the issues presented because those are the arguments and authority to which the respondent has an opportunity to respond in the respondent's brief. *Id*. We will not consider whether the district court incorrectly struck portions of David Nichols' affidavit because the Owens failed to raise this issue in their opening brief.

### f. *Undisputed facts cited by the district court*

In their reply brief, the Owens also dispute several facts the district court claimed were undisputed in its summary judgment decision:

14

1. The legal description of either deed does not provide for any overlap between the boundaries between the two properties.

2. There is no document recorded in the property records of Minidoka County for a claim by Plaintiffs to any portion of parcel 1 before the purchase of the parcel by the Defendants in April 2018.

3. The Smiths visited the property on several occasions before agreeing to the sale and did not see anything that would indicate a prior claim.

4. Mr. Smith, using a copy of the March 23, 2018[,] survey, inspected the premises and boundary lines prior to closing and found no fences or monuments to indicate a portion of the parcel had been in use or claimed by another.

5. Since April of 2018[,] the Defendants have requested that Plaintiffs have their property surveyed to settle the dispute or allow the Defendants to have their property surveyed but were refused each time.

6. On June 5, 2018, Mr. Smith observed that the Plaintiffs had parked a vehicle and trailer on his property and contacted the Plaintiff to have it removed.

7. In June of 2018, Mr. Owen installed a fence consisting of T posts, wire, and attached "No Trespassing" signs on Defendants' property running 23 feet southward from the southeast corner of Plaintiffs' property.

However, the Owens' efforts to dispute these facts are made up of conclusory statements that are unsupported by evidence in the record. Moreover, the Owens simply reiterate their arguments that we have already rejected over the alleged discrepancy between the 1978 and 2018 surveys. "I.R.C.P. 56(e) provides that the adverse party may not rest upon mere allegations in the pleadings, but must set forth by affidavit specific facts showing there is a genuine issue for trial." *Gem State Ins. Co. v. Hutchison*, 145 Idaho 10, 13, 175 P.3d 172, 175 (2007) (quoting *Rhodehouse v. Stutts*, 125 Idaho 208, 211, 868 P.2d 1224, 1227 (1994)). Mere conclusory allegations will not raise a genuine issue of material fact. *Gordon*, 166 Idaho at 119, 455 P.3d at 388. In addition, "[t]his Court will not search the record on appeal for error. *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) (citing *Suits v. Idaho Bd. of Prof'l Discipline*, 138 Idaho 397, 400, 64 P.3d 323, 326 (2003)). We will not consider the merits of the Owens' claims because they consist of conclusory statements that lack citations to the record.

**B.** **The Owens have failed to show how the district court abused its discretion in awarding the Smiths their attorney fees and costs under Idaho Code section 12-121.**

The Owens argue there is "absolutely no evidence" in the record to show that they filed and pursued their case frivolously, unreasonably or without foundation. The Owens claim the

1978 survey, their deed, and the legal description show a valid reason for their case since they include different coordinates from the 2018 survey. The Owens assert the district court's award of attorney fees should be vacated because no evidence supports the conclusion that they pursued their claims to protect their purchased and possessed property frivolously.

An award of attorney fees under Idaho Code section 12-121 and Idaho Rule of Civil Procedure 54(e)(1) will not be disturbed absent an abuse of discretion. *Idaho Military Historical Soc'y, Inc. v. Maslen*, 156 Idaho 624, 629, 329 P.3d 1072, 1077 (2014). Likewise, "[t]he district court's determination as to whether an action was brought or defended frivolously will not be disturbed absent an abuse of discretion." *Id.* (internal citation omitted). "The party asserting the abuse of discretion carries the burden of demonstrating that an abuse of discretion occurred, and a failure to do so is fatal to its argument." *Nielson v. Talbot*, 163 Idaho 480, 489, 415 P.3d 348, 357 (2018) (citing *Green River Ranches, LLC v. Silva Land Company, LLC*, 162 Idaho 385, 397 P.3d 1144, 1151 (2017)). When this Court reviews an alleged abuse of discretion by a trial court the sequence of inquiry requires consideration of *four* essential questions. Whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

The district court awarded attorney fees under section 12-121, finding the Owens brought and pursued the case frivolously, unreasonably and without foundation based on these actions:

    a. Prior to filing the action, Plaintiffs built a no trespassing sign on the property of the Defendants and parked motor vehicles on the property of the Defendants after being notified of the location of the boundary line between the parcels of Plaintiffs and Defendants[.]

    b. Plaintiffs refused to allow their property to be surveyed prior to [the] filing of their trespass action and continue[d] to refuse to allow their property to be surveyed during the pendency of the action.

    c. The actions of the Plaintiff[s] in refusing to allow their property to be surveyed substantially increased the cost of the litigation to the Defendants.

    d. The Plaintiffs frivolously and without foundation pursued a claim to deny Defendants the right to receive irrigation water through a pump and pipeline which were in existence prior to the time Plaintiffs acquired their property.

    e. The Defendants [sic] repetitiously asserted the same erroneous statements of facts and claims in various pleadings which substantially increased the cost to

16

Defendants of having their counsel review and respond to Plaintiff's [sic] erroneous claims regarding the legal description of the Plaintiffs' property and the pump and pipeline which serve[d] Defendants' property prior to Plaintiffs' purchase of the property.

The Owens make several conclusory allegations that attorney fees should not have been awarded to the Smiths. However, the Owens never articulate how the district court abused its discretion in awarding attorney fees. "Failing to demonstrate that an abuse of discretion occurred under any part of the test applied by this Court ... is fatal to [an] argument that the court abused its discretion." *Kelly v. Kelly*, 165 Idaho 716, 731, 451 P.3d 429, 444 (2019) (quoting *Matter of Doe I,* 165 Idaho 33, 44, 437 P.3d 33, 44 (2019)). Although this Court can appreciate the intricacies of representing oneself pro se, it is well established that "[p]ro se litigants must conform to the same standards and rules as litigants represented by attorneys." *Nickerson*, 164 Idaho at 38, 423 P.3d at 459 (quoting *Mendez*, 163 Idaho at 242, 409 P.3d at 822). The Owens carried the burden of showing that an abuse of discretion occurred. *Nielson*, 163 Idaho at 489, 415 P.3d at 357. The Owens' failure to argue how the district court abused its discretion is fatal to their argument.

## C. The district court's failure to rule on the Owens' motion for injunctive relief and punitive damages is moot.

The Owens also argue the district court erred by failing to rule on their pending motions for leave to file punitive damages and for injunctive relief. However, rather than rule on the Owens' motions, the district court granted the Smiths' motion for summary judgment, effectively resolving all the remaining issues in the case. In doing so, the district court held that the Owens have no right, title or interest in the disputed property described in the Smiths' deed and held the Smiths were bona fide purchasers with a superior claim to any land described in the same instrument. Thus, the Smiths did not trespass on the Owens' property. The district court's holding rendered the Owens' pending motions moot. We affirm that ruling.

## D. The Owens have failed to show the district court judge acted with bias.

As an issue on appeal the Owens stated, "Judge Tribe Bias and Failure to maintain Judicial Conduct." The Owens claim that the Smiths only prevailed because of their attorney's longstanding relationship with the second judge who treated them with disdain because they were pro se. "Regardless of whether an issue is explicitly set forth in the party's brief as one of the issues on appeal, if the issue is only mentioned in passing and not supported by any cogent

17

argument or authority, it cannot be considered by this Court." *Bach*, 148 Idaho at 790, 229 P.3d at 1152. The Owens have provided no legal authority on judicial bias, nor do they provide any citations to the record that demonstrate any specific acts of bias or prejudice by Judge Tribe. We also note that because the Owens did not move to disqualify the second district judge, they are precluded from raising that issue on appeal. *Zylstra v. State*, 157 Idaho 457, 468, 337 P.3d 616, 627 (2014) (In the absence of a motion for disqualification, this Court will not review allegations of judicial bias on appeal); *see also Johnson v. McPhee*, 147 Idaho 455, 469, 210 P.3d 563, 577 (Ct. App. 2009); *McPheters v. Maile*, 138 Idaho 391, 396, 64 P.3d 317, 322 (2003). Accordingly, we will not consider the Owens' claims that Judge Tribe acted with bias.

**E.      We award attorney fees to the Smiths on appeal under Idaho Code section 12-121.**

The Smiths request attorney fees on appeal under Idaho Code section 12-121, arguing that the Owens have not raised any meritorious issues on appeal but have inflicted additional monetary damage on the Smiths by requiring them to defend an appeal that has no merit. Idaho Code section 12-121 allows the award of attorney fees in a civil action if the appeal merely invites the Court to second guess the findings of the lower court. *Bach*, 148 Idaho at 797, 229 P.3d at 1159 (citing *Crowley v. Critchfield*, 145 Idaho 509, 514, 181 P.3d 435, 440 (2007)). Attorney fees may also be awarded under section 12-121 "if the appeal was brought or defended frivolously, unreasonably, or without foundation." *Id.* An award of fees under section 12-121 is within this Court's discretion. *Id*.

The Owens have simply invited this Court to second-guess the district court's findings in a lengthy brief without providing any new argument. The Owens have also advanced a number of redundant, conclusory allegations on appeal that are not supported by sufficient argument or authority. As a result, we award the Smiths attorney fees under section 12-121.

## VI. CONCLUSION

We affirm the district court's grant of summary judgment for the Smiths. We award attorney fees under Idaho Appellate Rule 41(c) and Idaho Code section 12-121. We award costs to the Smiths under Idaho Appellate Rule 40.

Chief Justice BURDICK and Justices STEGNER and MOELLER CONCUR.

Justice *pro tem* KIDWELL dissenting in part:

18

I respectfully dissent from the award of attorney fees on appeal. Otherwise, I concur with the majority Opinion.