**IN THE SUPREME COURT OF THE STATE OF IDAHO**
Docket No. 50200

| | |
|---|---|
| DUSTIN CLOVER,<br><br>   Plaintiff-Appellant,<br><br>v.<br><br>CROOKHAM COMPANY,<br>an Idaho corporation,<br><br>   Defendant-Respondent. | Boise, June 2024 Term<br><br>Opinion Filed: October 28, 2024<br><br>Melanie Gagnepain, Clerk |

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. Gene A. Petty, District Judge.

The district court judgment is <u>affirmed</u>.

Dinius & Associates, PLLC, Nampa, attorneys for Appellant. Kevin Dinius argued.

Brassey Crawford, PLLC, Boise, attorneys for Respondent. Jason Murray argued.

_____

BEVAN, Chief Justice.

This appeal arises from injuries Dustin Clover sustained while removing irrigation drip tape from a seed field while working for Crookham Company ("Crookham") in 2018. Clover filed a complaint against Crookham in district court, alleging that his injuries fell within an exception to the exclusive remedy rule under the Worker's Compensation statutes that permits an employee to file a separate civil action against an employer if the employer commits an act of "willful or unprovoked physical aggression" against the employee. Crookham moved for summary judgment, arguing that Clover failed to put forth evidence to support his claim that the "willful or unprovoked physical aggression" exception applied. The district court agreed and granted Crookham's motion for summary judgment. Clover filed a motion for reconsideration, which the district court denied. Clover timely appealed. For the reasons below, we affirm the district court's decision.

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

**A.     Factual Background**

Crookham Company is a seed production business in Caldwell, Idaho. In 2008, Crookham was looking for equipment to remove drip tape from its onion fields. Crookham could not find such equipment for purchase on the market but found similar equipment that other farmers had built. Using another farm's lifter as a prototype, Crookham built its own drip tape lifter. Crookham took photographs of the prototype, but did not conduct any research or hire any consultants to assist in its design of the drip tape lifter. Despite noting that the other drip tape lifters it observed had a seat attached to the side, Crookham placed a seat at the rear of its drip tape lifter.

In 2010, Crookham constructed a second drip tape lifter to use in its corn fields. Like the first one, the second drip tape lifter was designed and built by Crookham's employees. Once again, the employees involved in designing and constructing the drip tape lifter did not conduct any research or hire any consultants to assist and were allegedly unaware of the applicable Occupational Safety and Health Administration ("OSHA") regulations during the design and construction process. For the Crookham employees who would use the drip tape lifter, training occurred in the field; no other safety procedures were developed.

Two employees were needed to operate the drip tape lifter. One employee would drive a tractor, which operated at a speed of roughly five miles per hour as it pulled the drip tape lifter, and a second employee would either ride in the seat on the drip tape lifter or walk alongside the lifter to monitor the lifting of the drip tape. The employee monitoring the drip tape would call out to the driver to stop when the tape broke.

Dustin Clover started working for Crookham in February 2018. On November 6, 2018, Clover was working at Crookham's seed plot farm and monitoring the drip tape. After several hours of monitoring and calling out to the driver when the tape had broken, Clover, who was seated in the chair on the back of the machine, yelled out to the driver that the tape had broken. When the driver stopped, Clover was thrown forward, and his left arm hit the machine's rollers, which were still moving. His arm was pulled inside by the rollers, followed by his upper left torso until his head was against the rollers. The driver eventually reversed the rollers to release Clover's arm. Clover was taken to the hospital for severe injuries, including a crush injury to the left side of his chest and his left upper arm. Clover also had a left scapula fracture, a left-sided AC joint injury, acute left-sided facial abrasions, and an acute closed head injury.

While no safety concerns were ever raised about the drip tape lifters after they were first deployed by Crookham in 2008, Crookham has previously received health and safety violations and penalties following OSHA inspections on other equipment that it has manufactured. Following a workplace death in 2016,[1] Crookham hired a safety manager to address safety practices at the company. The safety manager was responsible for determining whether an injury would be reported to OSHA. Clover's accident was *not* reported to OSHA, though Crookham did file a worker's compensation claim on behalf of Clover.

## B.     Procedural History

On October 30, 2020, Clover filed a complaint and demand for jury trial alleging claims for (1) negligent design, manufacture, installation, and/or maintenance, (2) failure to warn, and (3) negligence. Nearly a year later, Clover sought leave to amend the complaint, which the district court granted. Clover's amended complaint removed his negligence claims and instead alleged a single count of unprovoked physical aggression based on the limited exception to the exclusive remedy rule contained in Idaho's Worker's Compensation Act. About a month later, Clover filed a second motion for leave to file an amended complaint, asserting that (1) Crookham's actions were oppressive and outrageous, and (2) Crookham's failure to report Clover's accident and injuries to OSHA supported a claim for punitive damages. In support of the motion for leave to amend, Clover filed a declaration from Dr. Adam Aleksander, an expert in investigation techniques, reconstruction, photogrammetry, and reconstruction of incidents involving property loss, injuries, and fatalities.

Crookham opposed Clover's motion for leave to amend and moved to strike Dr. Aleksander's declaration. At the same time, Crookham moved for summary judgment. Crookham argued that Clover's claim turned on a limited exception to the exclusive remedy rule and Clover failed to put forth any evidence supporting that exception. In June 2022, the district court entered its memorandum decision: (1) granting in part and denying in part Crookham's motion to strike Dr. Aleksander's declaration; (2) denying Clover's motion for leave to file a second amended complaint; and (3) granting Crookham's motion for summary judgment. The district court concluded that the unprovoked physical aggression exception to the exclusive remedy rule did not

---

[1] This incident is addressed in *Gomez v. Crookham Co.*, 166 Idaho 249, 256, 457 P.3d 901, 908 (2020).

apply. Clover filed a motion for reconsideration, which the district court denied. Clover timely appealed to this Court.

## II. ISSUES ON APPEAL

**1.** Did the district court err in granting Crookham's motion for summary judgment?

**2.** Did the district court err in denying Clover's motion for reconsideration?

**3.** Is either party entitled to attorney fees or costs?

## III. STANDARDS OF REVIEW

"This Court employs the same standard as the district court when reviewing rulings on summary judgment motions." *Owen v. Smith*, 168 Idaho 633, 640, 485 P.3d 129, 136 (2021) (quoting *Trumble v. Farm Bureau Mut. Ins. Co. of Idaho*, 166 Idaho 132, 140, 456 P.3d 201, 209 (2019)). "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting I.R.C.P. 56(a)). "A moving party must support its assertion by citing particular materials in the record or by showing the 'materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact[s].'" *Id.* (quoting I.R.C.P. 56(c)(1)(B)). "Summary judgment is improper 'if reasonable persons could reach differing conclusions or draw conflicting inferences from the evidence presented.'" *Id.* at 641, 485 P.3d at 137 (quoting *Trumble*, 166 Idaho at 141, 456 P.3d at 210). A "mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment." *Id.*

When reviewing the grant or denial of a motion for reconsideration, the district court, as well as this Court, "must apply the same standard of review that the court applied when deciding the original order that is being reconsidered." *Drakos v. Sandow*, 167 Idaho 159, 162–63, 468 P.3d 289, 292–93 (2020) (quoting *Alsco, Inc. v. Fatty's Bar, LLC*, 166 Idaho 516, 524, 461 P.3d 798, 806 (2020)). Thus, "when reviewing the grant or denial of a motion for reconsideration following the grant of summary judgment, this Court must determine whether the evidence presented a genuine issue of material fact to defeat summary judgment." *Id.* (citing *Ciccarello v. Davies*, 166 Idaho 153, 159, 456 P.3d 519, 525 (2019)).

4

**A.     The district court did not err in granting Crookham's motion for summary judgment.**

Clover argues that the district court erred in finding his unprovoked physical aggression claim was barred under the Worker's Compensation Act's exclusive remedy rule in Idaho Code sections 72-209 and 72-211. To avail himself of this exception to the exclusive remedy rule, Clover had the burden to demonstrate that there were genuine issues of material fact as to whether Crookham engaged in a willful or unprovoked act of physical aggression in its design and use of the drip tape lifter. For the reasons discussed below, we hold that the district court correctly held that Clover failed to do so.

"Idaho's Worker['s] Compensation laws provide the exclusive remedy for employees against their employer for an injury arising from and in the course of employment":

> Subject to the provisions of [Idaho Code] section 72-223, the rights and remedies herein granted to an employee on account of an injury or occupational disease for which he is entitled to compensation under this law shall exclude all other rights and remedies of the employee, his personal representatives, dependents or next of kin, at common law or otherwise, on account of such injury or disease.

*Fulfer v. Sorrento Lactalis, Inc.*, 171 Idaho 296, 520 P.3d 708, 715 (2022) (quoting I.C. § 72-211). Idaho Code section 72-209(1) also explains that recourse under Idaho's Worker's Compensation laws is the exclusive remedy: "Subject to the provisions of section 72-223, Idaho Code, the liability of the employer under this law shall be exclusive and in place of all other liability of the employer to the employee, his spouse, dependents, heirs, legal representatives or assigns."

In addition to the provisions of section 72-223, there is an exception to the exclusive remedy rule that applies to employers. The version of Idaho Code section 72-209(3) in effect at the time of Clover's injury governs this exception:

> [I]n any case where the injury or death is proximately caused by the wilful or unprovoked physical aggression of the employer, its officers, agents, servants or employees, the loss of such exemption applying only to the aggressor and shall not be imputable to the employer unless provoked or authorized by the employer, or the employer was a party thereto.

I.C. § 72-209(3).[2] "The employee bears the burden of showing that the exception applies." *Marek v. Hecla, Ltd.*, 161 Idaho 211, 215, 384 P.3d 975, 979 (2016) ("Thus, the original burden of

---

[2] Idaho Code section 72-209(3) was amended in 2020. This opinion analyzes section 72-209(3) as it existed at the time of Clover's accident in 2018.

showing the injury is the type of injury generally covered by the Worker's Compensation Act falls on the employer, however, after establishing the Worker's Compensation Act applies, the burden of showing the injury falls under the section 72-209(3) exception falls on the employee.").

To establish that this exception to the exclusive remedy rule applies, the employee must show "unprovoked physical aggression":

> [A]n employee is relieved of showing the employer specifically wished the employee harm, rather the employee must only show the employer *actually knew* or *consciously disregarded knowledge* that employee injury would result from the employer's action. In other words, again, looking to our prior definition of physical aggression, an act of "unprovoked physical aggression" is one where the employer (1) committed an offensive action or hostile attack (2) aimed at the bodily integrity of the employee with (3) an unprovoked, i.e., general, intent to injure an employee.

*Marek*, 161 Idaho at 217, 384 P.3d at 981 (emphasis added). In explaining that standard, the Court rejected an interpretation of aggression that included substantial certainty. *Id.* at 218, 384 P.3d at 982. Instead, "to satisfy the level of intent required to trigger application of section 72-209(3)[,] an employee must show the employer either (1) specifically intended to harm the employee *or* (2) engaged in conduct knowing employee injury would result." *Id.* (emphasis added). The Court clarified that an unprovoked physical aggression "is one lacking in motive, deliberation, or specific purpose. Thus, opposed to the willful standard, the unprovoked standard does not require a showing that the employer had a specific intent or desire to harm a specific employee." *Id.* at 217, 384 P.3d at 981.

Here, the district court concluded that the exclusive remedy rule barred Clover's claims, beginning first with an analysis of how there was no issue of fact that Clover's claim was covered by the Idaho Worker's Compensation Act:

> There is no genuine issue of material fact that Mr. Clover's injuries occurred during the course and scope of his employment with Crookham, and that his injuries were covered by worker's compensation. On November 6, 2018, Crookham assigned Mr. Clover to monitor the drip tape lifter on one of its seed plot farms. When tractor [sic] stopped for Mr. Clover to fix the broken drip tape, he fell off the chair of the drip tape lifter and into the rollers, resulting in Mr. Clover's arm and upper torso being pulled into the rollers. Unless Mr. Clover can establish that his injuries fall under the exception of I.C. § 72-209(3), the exclusive remedy rule will bar the claim in this case.

The district court then examined whether there were any issues of material fact as to whether Crookham's conduct fell within the unprovoked physical aggression exception:

There is no evidence in the record that Crookham had OSHA violations regarding any of the farm implements used in its fields. Crookham never received any concerns or complaints from employees, including Mr. Clover, that the drip tape lifter was in any way unsafe. Furthermore, Crookham used the drip tape lifters for nine seasons without injuries to any employees.

There is no evidence to support a finding that Crookham was aware that the drip tape lifter, as designed or operated, posed an obvious and grave risk to an employee's life and limb. Mr. Clover argues that Crookham's OSHA violation for guarding that resulted in the death of an employee in *Gomez v. Crookham* [*Co.,* 166 Idaho 249, 457 P.3d 901 (2020)], is evidence that Crookham knew that OSHA regulations required the drip tape lifter's rollers to be guarded, but ignored the regulation and continued to use the drip tape lifter without this safety modification. There is no evidence in the record that Crookham was aware that guarding was required by OSHA on the drip tape lifter based on the previous guarding violation for its seed sorting machine, or that Crookham consciously disregarded this requirement when it allowed its employees to continue using the drip tape lifter after Mrs. Gomez's death in 2016. Although there is sufficient evidence to show that Crookham's failure to consult and follow OSHA regulations in its construction of the drip tape lifter may be negligence per se, this evidence is insufficient to show that Mr. Clover's injuries were proximately caused by the unprovoked physical aggression of Crookham.

As articulated by the district court, there is no evidence in the record to suggest that Crookham consciously disregarded knowledge that the drip tape lifter was unsafe.

In *Gomez v. Crookham Co.*, 166 Idaho 249, 457 P.3d 901 (2020), this Court took the opportunity to "flesh out the circumstances under which the consciously disregarded knowledge test might be satisfied." *Id.* at 258, 457 P.3d at 910. This Court explained that "[h]aving no actual knowledge of a danger to employees, as opposed to consciously disregarding knowledge of a danger, are not synonymous. The point of the consciously disregarded knowledge exception is to take into account cases where an employer was aware of the danger, but consciously decided to ignore it." *Id.*

The facts present in *Gomez* are distinguishable from the case at hand. There, in late 2015, a Crookham employee had fabricated and installed a new table to sort seeds more efficiently. *Id.* at 252, 457 P.3d at 904. The new picking table's drive shaft was not fully guarded, and the company did not adhere to required lockout-tagout procedures, even though OSHA had cited Crookham for violating machine guard safety standards and lockout-tagout protocol. *Id.* While Gomez was trying to clean under the table, the exposed drive shaft caught her hair and pulled her into the machine. *Id.* at 253, 457 P.3d at 905. Gomez died from her injuries. *Id.* Following the

7

incident, OSHA investigated Crookham, finding the company had "serious" violations because it exposed employees to the unguarded drive shaft without lockout-tagout procedures. *Id.* Still, the district court granted Crookham summary judgment after concluding that Gomez's claims were barred by the exclusive remedy rule and the unprovoked physical aggression exception to the rule did not apply because the Gomezes failed to prove Crookham had "actual knowledge" that Gomez's injury would occur. *Id.*

On appeal, this Court reversed summary judgment, holding that the district court glossed over whether Crookham consciously disregarded information about a significant risk to its employees. *Id.* at 260, 457 P.3d at 912. We explained that the point of the consciously disregarded knowledge exception is to take into account cases where an employer was aware of the danger, but consciously decided to ignore it. *Id.* Of particular importance in *Gomez*, the Court considered the fact that OSHA had cited Crookham for violating machine guard safety standards *before* Gomez's death. *Id.* at 259, 457 P.3d at 911.

In this case, there were no prior incidents of employee injuries while driving or riding on the drip tape lifter, nor do we note any evidence in the record to suggest that Crookham consciously disregarded that information. Instead, the evidence demonstrates that Crookham used the drip tape lifter for nine seasons without issue. Although Crookham admitted knowledge that the equipment was dangerous, the same could be said for any piece of large farm equipment. Our focus must remain on whether Crookham failed to take appropriate action after learning about a particular risk: "The point of the consciously disregarded knowledge exception is to take into account cases where an employer was aware of the danger, but consciously decided to ignore it." *Gomez*, 166 Idaho at 259, 457 P.3d at 911. Here, we agree with the district court's determination that Clover failed to present an issue of material fact to support his allegation that Crookham was aware of a danger concerning the drip tape lifter.

Separately, Clover argues that the district court's analysis improperly focused on the employees who designed and built the drip tape lifter and their subjective beliefs that the drip tape lifter was safe. Clover challenges the district court's reference to the employees' lack of understanding as it related to OSHA requirements, arguing that it did not relieve Crookham, the employer, from its responsibility to ensure the safety of its employees. Clover is correct that Crookham would not be relieved from ensuring the safety of its employees based on the employees' familiarity with OSHA requirements; however, Clover fails to identify anything in the

8

record that supports a claim that Crookham as a company had knowledge that injury would result from the drip tape lifter.

Ultimately, claimants seeking to assert a claim under the "unprovoked physical aggression" exception must meet a high bar. *Gomez*, 166 Idaho at 257, 457 P.3d at 909. To raise a genuine issue of material fact about whether Crookham consciously disregarded knowledge, Clover was required to show that Crookham had knowledge of an "obvious and grave risk," "grave danger," "serious risk," or a "hazardous situation." *Hickman v. Boomers, LLC*, __ Idaho __, 554 P.3d 99, 108 (2024) (citing *Gomez*, 166 Idaho at 260, 457 P.3d at 912; *Marek*, 161 Idaho at 217, 384 P.3d at 981; *Fulfer*, 171 Idaho at 298, 520 P.3d at 710). No such showing was made here.

In reaching this decision, we reiterate our observation in *Gomez* that employers are not permitted to turn a blind eye to known dangers to insulate themselves from liability through feigned ignorance. *Gomez*, 166 Idaho at 259, 457 P.3d at 911. However, we conclude that under the circumstances unique to this case, Clover failed to present evidence that Crookham consciously disregarded knowledge that an injury would result. *See id*. Accordingly, we affirm the district court's conclusion that Clover did not submit sufficient evidence to show his injuries were proximately caused by the unprovoked physical aggression of Crookham.

**B.      The district court did not err in denying Clover's motion for reconsideration.**

After the district court granted summary judgment to Crookham, Clover moved for reconsideration and submitted another declaration from Dr. Adam Aleksander, a mechanical engineer, which responded specifically to some of the district court's determinations on summary judgment. Clover argues that the district court erred in denying his motion for reconsideration because: (1) the court improperly concluded that Dr. Aleksander's post-summary judgment declaration was untimely; and (2) the court again erred in how it considered the employees' knowledge as it related to OSHA and industry safety requirements rather than Crookham's knowledge.

Under Idaho Rule of Civil Procedure 11.2(b)(1), "[a] motion to reconsider any order of the trial court entered before final judgment may be made at any time prior to … the entry of a final judgment." The trial court should consider any new admissible evidence or authority bearing on the correctness of an interlocutory order. *Summerfield v. St. Luke's McCall, Ltd.*, 169 Idaho 221, 234, 494 P.3d 769, 782 (2021) (quoting *Int'l Real Est. Sols., Inc. v. Arave*, 157 Idaho 816, 819, 340 P.3d 465, 468 (2014)).

9

For example, if the trial court's ruling was based on a misunderstanding of the record, or if there was material evidence in the record that either side failed to present to the court on summary judgment, the court must consider such evidence on reconsideration if it would affect the correctness of its original decision. However, *Ciccarello* allows the court discretion to not consider evidence which reasonably should have been made a part of the record sooner, but was not.

*Id.* (citing *Ciccarello v. Davies*, 166 Idaho 153, 162, 456 P.3d 519, 528 (2019)). When deciding a motion for reconsideration, "the district court must apply the same standard of review that the court applied when deciding the original order that is being reconsidered." *Id.* The underlying motion here was a motion for summary judgment. That standard is articulated above, but it requires, in part, that "[t]he court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). When considering whether the record shows there is no genuine dispute of material fact, "the trial court must liberally construe the facts, and draw all reasonable inferences, in favor of the nonmoving party." *Oswald v. Costco Wholesale Corp.*, 167 Idaho 540, 549, 473 P.3d 809, 818 (2020).

1. *The district court did not abuse its discretion in finding that the post-summary judgment declaration of Dr. Aleksander was untimely.*

Clover filed the first declaration of Dr. Aleksander in support of his motion for leave to amend his complaint to add a claim for punitive damages. Crookham filed a motion to strike, arguing that Dr. Aleksander's entire declaration should be excluded because it contained inadmissible hearsay, or in the alternative, that the court should strike certain portions of Dr. Aleksander's report because they were conclusory or speculative. A month later, Clover submitted an amended declaration for Dr. Aleksander which stated that he would testify at trial "in concert with and to the content in" his report, including his inspection and assessment of the drip tape lifter, his assessment of Crookham's safety policies, procedures, methodology, and training regarding the drip tape lifter, and his opinions about the same. At oral argument on the motion to strike, Crookham argued that the amended declaration was untimely.

In a memorandum decision, the district court found that Dr. Aleksander's amended declaration was timely. However, the district court excluded several portions of Dr. Aleksander's report where he opined about the state of mind of Crookham or its employees, including that they acted with "intent," "intentionally," with "deliberate ignorance," "knowingly," and "willfully." The court found that these opinions were speculative and unhelpful in determining whether

Crookham or its employees acted with such states of mind. The district court then went on to grant Crookham's motion for summary judgment after concluding that the unprovoked physical aggression exception did not apply.

In support of his motion for reconsideration, Clover submitted a third declaration of Dr. Aleksander. Therein, Dr. Aleksander outlined a new theory – that the machine originally had a guard and that it had been removed. Crookham objected to Dr. Aleksander's declaration, arguing that Dr. Aleksander's "new" theory and analysis were not based on any facts or other data that were not available at the time of summary judgment.

In its memorandum decision and order denying Clover's motion for reconsideration, the district court declined to consider the evidence contained in Dr. Aleksander's third declaration because "Aleksander's opinions were developed after the [c]ourt's [o]rder and are based on his reevaluation of the evidence. These opinions should have been presented to the [c]ourt on summary judgment, but were not." Relying on Idaho Rule of Civil Procedure 11.2(b)(1) and the timing requirements under Idaho Rule of Civil Procedure 56(d)(2), the district court concluded that Dr. Aleksander's declaration was untimely, explaining:

> On January 28, 2021, this [c]ourt entered its Order Governing Proceedings and Order Setting Trial and Scheduling Conference. The order governing proceedings requires the following for motions for summary judgment:
>
>> 1.3 **Summary Judgment**. All motions for summary judgment must **be filed** at least **one hundred eighteen (118) days, and heard** at least **ninety (90)** days before trial. The service of briefs and affidavits shall be according to the schedule set forth in Idaho Rule of Civil Procedure 56(b).
>
> Crookham filed its motion for Summary Judgment on December 31, 2021, and the Motion was set to be heard on May 12, 2022. Pursuant to the [c]ourt's Order Governing Proceedings § 1.3 and I.R.C.P. 56(d)(2), Mr. Clover's answering brief and declarations were to be filed on or before April 28, 2022. Mr. Clover did file his brief and declarations on April 28, 2022. After granting summary judgment in favor of Crookham on June 9, 2022, Mr. Clover filed the Declarations of Counsel, Plaintiff, and Adam Aleksander in support of his Motion for Reconsideration on June 23, 2022. On reconsideration, this [c]ourt is required to apply the same standard as applied when it decided the original motion for summary judgment. Therefore, the timing requirements under I.R.C.P. 56(d)(2) and this [c]ourt's Order Governing Proceedings § 1.3 apply. These declarations were filed 56 days late. The [c]ourt, therefore, finds that the declarations filed in support of Mr. Clover's Motion for Reconsideration are untimely.

(Emphasis original).

11

This Court examined a similar issue in *Ciccarello v. Davies*, 166 Idaho 153, 161, 456 P.3d 519, 527 (2019). *Ciccarello* was a medical malpractice appeal, but one of the issues before this Court was whether the district court erred in denying Ciccarello's motion for reconsideration. *Id.* at 161, 456 P.3d at 527. Ciccarello submitted two expert declarations; one declaration was submitted right before the district court granted summary judgment, and the second was filed with Ciccarello's motion for reconsideration. *Id.* at 161–62, 456 P.3d at 527–58. This Court affirmed the district court's decision "because the declarations provided by Ciccarello's experts were untimely for consideration at summary judgment per Idaho Rule Civil Procedure 56(b)(2), [and so] it was not required to consider them in ruling on the motion for reconsideration." *Id.*

*Ciccarello*'s rationale applies here. Clover's expert witness declarations were due on April 28, 2022. Clover did not submit the third Aleksander declaration until June 23, 2022, after summary judgment was granted. While "'the trial court should take into account any new facts presented by the moving party that bear on the correctness of the order,' *Int'l Real Estate Solutions, Inc., v. Arave*, 157 Idaho 816, 819, 340 P.3d 465, 468 (2014), this rule was not designed to allow parties to bypass timing rules or fail to conduct due diligence prior to a court's ruling." *Id.* Rather, "'[t]he purpose of a motion for reconsideration is to reexamine the correctness of an order[.]'" *Id.* (quoting *Arave*, 157 Idaho at 819, 340 P.3d at 468). Ultimately, "[t]he trial court has broad discretion to admit or exclude evidence[.]" *Clair v. Clair*, 153 Idaho 278, 283, 281 P.3d 115, 120 (2012) (citing *State v. Perry*, 139 Idaho 520, 521, 81 P.3d 1230, 1231 (2003)). "Error may not be predicated upon a ruling which admits or excludes evidence unless the ruling is a manifest abuse of the trial court's discretion and a substantial right of the party is affected." *Id.* (quoting *Burgess v. Salmon River Canal Co.*, 127 Idaho 565, 574, 903 P.2d 730, 739 (1995)). Here, we conclude that the district court did not abuse its discretion in finding Aleksander's post-summary judgment declaration was untimely because it relied on facts that were available before summary judgment was granted.

2. *The district court did not err in finding evidence of subsequent remedial measures was inadmissible under Idaho Rule of Evidence 407.*

Clover maintains that the "fallout" stemming from the district court's error in not considering Dr. Aleksander's third declaration adversely impacted the court's analysis on the admissibility of evidence of subsequent remedial measures. When the district court granted Crookham's motion for summary judgment, it additionally granted Crookham's objection to

Clover's attempt to introduce evidence of subsequent remedial measures. Specifically, the court held that Clover could not introduce evidence of modifications Crookham made to the drip tape lifter following Clover's accident because they were inadmissible under Idaho Rule of Evidence 407, and Clover had not argued they should be admissible for another purpose. Crookham had not disputed ownership or control of the drip tape lifter, or the precautionary measures taken to modify the drip tape lifter.

In Clover's motion for reconsideration, he argued that Crookham's subsequent modification to the drip tape lifter should have been admissible to show that Crookham could have placed the seat on the side of the drip tape lifter rather than the back, and that modifications made after his injuries were relevant to show the feasibility of the precautionary measures. In response, Crookham reiterated that it had never disputed the feasibility of changes it made to the drip tape lifter. The district court declined to consider the safety modifications that Crookham made to the drip tape lifter after Clover's injuries because Crookham did not dispute the ownership or control of the drip tape lifter, or the feasibility of the precautionary measures taken to modify the drip tape lifter.

The decision whether to admit evidence is discretionary for the trial court. *Nelsen v. Nelsen*, 170 Idaho 102, 118, 508 P.3d 301, 317 (2022). Under Idaho Rule of Evidence 407:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
> - negligence;
> - culpable conduct;
> - a defect in a product or its design; or
> - a need for a warning or instruction.
>
> But the court may admit this evidence for another purpose, such as impeachment or–if disputed–proving ownership, control, or the feasibility of precautionary measures.

I.R.E. 407.

The district court did not abuse its discretion in denying this portion of Clover's motion for reconsideration. Clover does not allege that he was offering evidence of Crookham's subsequent remedial measures for the purpose of "proving ownership, control, or the feasibility of precautionary measures." I.R.E. 407. Also pertinent to the analysis, Crookham never controverted ownership, control, or feasibility of precautionary measures. Therefore, the district court did not

13

abuse its discretion in finding that evidence of subsequent remedial measures was inadmissible both at summary judgment and in denying Clover's motion for reconsideration.

> 3. *The district court did not err in denying Clover's motion for reconsideration because Clover failed to present new facts sufficient to raise a genuine dispute of material fact in support of the motion.*

As a separate issue on appeal, Clover argues that Crookham knew or consciously disregarded knowledge that the drip tape lifter would injure its employees. Although Clover pointed out this exception to the exclusive remedy rule in support of his argument related to summary judgment, Clover raised the issue again in his motion for reconsideration related to OSHA's guarding regulations and the employee and safety manuals. And importantly, both the Crookham Company Employee Manual and the Crookham Company Safety Manual were provided to the district court for the first time as attachments to the declaration of Dustin Clover and the declaration from his attorney, submitted in support of Clover's motion for reconsideration. As a result, this issue is considered in connection with the other rationales that Clover alleges show the district court erred in denying his motion for reconsideration.

The district court explained in its decision denying Clover's motion for reconsideration:

In the Declarations of Plaintiff and Counsel, Mr. Clover introduced several records in support of his Motion for Reconsideration, including the Crookham Company Employee Manual, the Crookham Company Safety Manual, inspection and citation records, the deposition transcript of Jim Bennett in *Gomez v. Crookham*, and Crookham's Answers and Responses to Plaintiff's First Set of Interrogatories, Requests for Admission and Requests for Production of Documents and Things. Mr. Clover argues that these records demonstrate that Crookham knew or consciously disregarded knowledge of known safety risks by using unguarded machinery.

. . .

In an exercise of its discretion, *the [c]ourt will consider the Crookham Company Employee Manual, the inspection and citation records, the Crookham Company Safety Manual, the Gomez v. Crookham Co.* deposition testimony of [Idaho Rule of Civil Procedure] 30(b)(6) witness Jim Bennett, and Crookham's discovery responses in this case. Although this evidence was previously in Mr. Clover and his counsel's possession and could have been introduced on summary judgment, Crookham cannot be surprised by this evidence. . . . Mr. Clover specifically argues that the [c]ourt should focus on Crookham Company's knowledge, and not the knowledge of its employees. This evidence may assist the [c]ourt in determining the correctness of its Order, and will, therefore, be considered.

(Emphasis added).

14

While the district court considered the documents, neither the district court nor Clover identified the applicable portions of the Crookham employee manual or safety manual that Clover relies on. That said, the relevant provision from the employee manual is easier to glean than the other information set forth by the district court above, as only two sections relate to safety and accident prevention:

**7.1 Generally**

Crookham Company regards its employees as its most valuable assets and is committed to providing a safe and healthy workplace for all. Employees share the responsibility for the success of the safety and health program. Safety is everyone's business. You must give safety primary importance in the performance of every aspect of your day-to-day job duties. Crookham Company's goal is to protect you against occupational injuries and illnesses.

**7.2 Safety Policy**

• Safety is the primary responsibility of every employee at Crookham Company.

• Management recognizes its obligation to provide a safe environment in which to work, to provide adequate safety equipment, to train employees in safe operating practices and to establish and enforce safety regulations,

• All employees are obligated to perform assigned duties safely by following established safe working procedures, using proper safety equipment and by reporting or correcting unsafe conditions or acts.

• The Company makes necessary safety and protective equipment available,

• Abide by all safety precautions, postings, bulletins, Company Manual, policies and procedures, as well as state and federal rules and regulations. . . .

Clover's opening brief on appeal explains that the safety manual "included the following requirements and responsibilities that were not followed and/or employed by [Crookham]." Clover provides no other information about those requirements following that sentence. The safety manual, included in the record, is 126 pages. Along similar lines, Clover also points to "evidence in the record detailing Respondent's disregard or outright refusal to follow OSHA guidelines" as "further support for the application of the exception to the exclusive remedy rule in this case." This argument does not, however, identify the OSHA guidelines that support Clover's argument that Crookham knew and consciously disregarded knowledge the drip tape lifter would cause injury to its employees.

"This Court will not search the record on appeal for error." *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) (citing *Suits v. Idaho Bd. of Prof'l Discipline*, 138 Idaho 397, 400, 64 P.3d 323, 326 (2003)). "Consequently, to the extent that an assignment of error is not

15

argued and supported in compliance with the [Idaho Appellate Rules], it is deemed to be waived." *Id.* (citing *Suitts v. Nix*, 141 Idaho 706, 708, 117 P.3d 120, 122 (2005)). Without argument articulating *how* the employee manual or safety manual show that Crookham knew and consciously disregarded knowledge, or identifying what portions of those manuals or OSHA guidelines demonstrate knowledge, this issue is waived.

With that said, the district court agreed to consider the safety and employee manuals, presumably in their entirety, in its decision on Clover's motion for reconsideration. Even considering that new evidence, the district court concluded:

> The *evidence in the record does not establish that Crookham Company or its employees knew or consciously disregarded knowledge that the drip tape lifter would cause Mr. Clover's injuries*. In the Order, this [c]ourt analyzed the facts in the record and explained the reasons why Crookham's summary judgment should be granted. Order, p. 16-19. The [c]ourt finds that prior analysis to be correct, but it will not be restated at length. *The evidence that will be considered on the motion for reconsideration does not alter those facts or that analysis*.
>
> . . . .
>
> The Crookham Company Employee Manual dictates that "[e]mployees are expected to promptly report all unsafe working conditions, accidents and injuries, regardless of how minor so that any potential hazards can be corrected." Clover Decl., Ex. B, CC 0106. Crookham's safety policy is to "[a]bide by all safety precautions, postings, bulletins, Company Manual, policies and procedures, as well as state and federal rules and regulations." Clover Decl., Ex. B, CC 0120. The previous OSHA inspections and concerns related to other equipment, including the seed sorting machine in *Gomez*. None of the OSHA concerns involved farm implements used in Crookham's fields. Crookham's policies and the fact that it had some knowledge of OSHA do not mean that Crookham was aware that OSHA applied to the design or operation of the drip tape lifter and disregarded that knowledge. In addition, Crookham never received any concerns or complaints from employees, including Mr. Clover, that the drip tape lifter was unsafe. There is also no evidence in the record that Crookham was aware that OSHA required guarding on the drip tape lifter or that Crookham consciously disregarded this requirement when it allowed employees to continue using the drip tape lifter.

(Emphasis added).

Because the standard of review applicable here requires the Court to "apply the same standard of review that the court applied when deciding the original order that is being reconsidered," when examining a motion for reconsideration on a summary judgment decision, "this Court must determine whether the evidence presented a genuine issue of material fact to defeat summary judgment." *Drakos v. Sandow*, 167 Idaho 159, 162–63, 468 P.3d 289, 292–93

16

(2020) (first quoting *Alsco, Inc. v. Fatty's Bar, LLC*, 166 Idaho 516, 524, 461 P.3d 798, 806 (2020), and then citing *Ciccarello v. Davies*, 166 Idaho 153, 159, 456 P.3d 519, 525 (2019)).

Clover did not put forward new facts in support of his motion for reconsideration sufficient to raise a genuine dispute of material fact. Thus, the district court's decision denying Clover's motion for reconsideration is affirmed.

## C.     Neither party is entitled to attorney fees on appeal.

Crookham requests fees and costs under Idaho Appellate Rules 35(b)(5), 40, 41(a), and Idaho Code section 12-121. Attorney fees may be awarded to a prevailing party under Idaho Code section 12-121 if the proceeding was brought, pursued, or defended frivolously, unreasonably, or without foundation. I.C. § 12-121. Although Crookham is the prevailing party on appeal, we do not find that Clover's arguments justify an award of attorney fees under section 12-121. Crookham is awarded costs as the prevailing party. I.A.R. 40.

### V. CONCLUSION

For the reasons above, we affirm the district court's grant of summary judgment to Crookham. We also affirm the district court's decision to deny Clover's motion for reconsideration. Crookham is awarded costs as the prevailing party on appeal.

Justices BRODY, MOELLER, ZAHN, and MEYER concur.